8813

McAULEY *ET AL.* v. ORR *ET AL.*

(81 S. E. 489.)

DISMISSAL FOR WANT OF PROSECUTION.   LACHES.

An action to recover certain real estate and rents and profits against certain defendants, all of whom but one were minors, was instituted March 4, 1889. No guardian *ad litem* was appointed, but a demurrer on the ground that two causes of action were improperly united was sustained November 30, 1891, and plaintiffs were given the right to elect on which cause of action they would go to trial. From 1892, when notice of election was served, until 1912, when a guardian *ad litem* for certain minor plaintiffs was appointed, nothing was done. One of the original plaintiffs died in 1894, after having promised one of defendants that he would abandon the suit. The cause was first docketed in April, 1889, and carried forward from term to term until the October, 1897, term, when it was "stricken off with leave to restore." It did not again appear on the calendar until the April, 1900, term. In April, 1889, a referee was appointed, and in January, 1913, the heirs at law of the deceased plaintiff asked leave to amend the complaint and to serve a supplemental complaint, whereupon defendants moved to dismiss for want of prosecution. *Held,* that plaintiffs were guilty of inexcusable laches, entitling defendants to a dismissal.

Before W. A. HOLMAN, special Judge, Yorkville, July, 1913. Reversed.

Action by Francis M. McAuley and others against A. E. Orr and others. From an order granting plaintiff's motion to amend, and denying defendant's motion to dismiss for want of prosecution and laches, defendants appeal.

The order appealed from was as follows:

The plaintiffs made a motion before the Court at Yorkville, during the term held in July, 1913, to mend their complaint, and for leave to serve a supplemental complaint; the defendants resisted the relief demanded, on the ground of long delay and unreasonable neglect on the part of the plaintiff in the prosecution of this cause, and ask that the complaint be dismissed, and that the plaintiffs be adjudged to

pay the costs.    The plaintiffs' counsel objected to the form
of the motion, in which this matter was presented to the
Court, but I overrule this objection for the reason that the
Court of its own motion may raise the question of laches.
*Wagner* v. *Sanders*, 62 S. C. 73.

In order to understand this motion I will briefly state the
underlying facts connected with this litigation.    On the 4th
day of March, 1889, William E. Dickey *et al.*, commenced
an action against A. E. Orr, William A. Orr *et al.*, for the
recovery of a tract of land in York county, described in the
complaint herein, and for an accounting for the rents and
profits, against F. H. Barber and W. P. Ferguson, as exec-
utors of the estate of John Dickey, deceased.    The defend-
ants demurred to this complaint, on the ground of mis-
joinder of causes of action, the matter was heard before his
Honor, Judge Fraser, and he sustained the demurrrer and
required the plaintiffs to elect upon which cause of action
they would proceed, and the defendants under this order
elected to proceed upon the cause of action for the recovery
of the land, and dismissed the action for an accounting
against the executors above mentioned.    William E. Dickey,
one of the plaintiffs in the original action, died about the
17th day of October, 1894, leaving as his heirs and distribu-
tees at law, his widow, Mary G. Dickey, and two children,
Frances M. McAuley and William D. Dickey, at the death
of their father in 1894, they were infants of tender years
and are still minors; that the widow of William E. Dickey
intermarried with Marion E. Ardrey, and afterwards died
leaving as her heirs at law her husband and children, the
widow had two children by her last husband, Mary Clair
Ardrey and Inez Ardrey.    In 1897 the above cause was
stricken from the docket by his Honor, Judge Benet, with
leave to restore, and thereafter in 1900 the cause was
restored.    It will be unnecessary for me to attempt to set
out the history as to the title of the land in question, that
matter is not before me for adjudication.    The defendants

have introduced before me affidavits, going to show the great disadvantage at which they will be placed, on account of the loss of evidence, by reason of long delay, and the failure to prosecute this cause in reasonable time, and this is one of the misfortunes, accompanying inaction, in the prosecution of cases, and the Courts will dismiss a cause for unreasonable delay; but this power to dismiss must, of necessity, depend upon the circumstances of each particular case, what might be unwarranted delay in some cases, would not be so in others; there can be no definite rule, formulated on the subject; this Court in the case of *Babb* v. *Sullivan,* 43 S. C., page 441, has very clearly expressed the doctrine of laches this way:

"It is confessedly impossible to adopt a general rule and to fix a definite length of delay which shall justify a Court of equity in refusing relief on the ground of laches. Each case must be governed by its own facts, and Courts of equity must be trusted to exercise a salutary discretion. As we understand the doctrine of estoppel by laches, the facts in this case would justify us in holding that even a shorter delay than nine years and six months, inexcusable or unexplained, would have furnished the Circuit Court with sufficient grounds for refusing the order moved for. Delay is not the sole factor that constitutes laches. If it were so, some period fixed by statute or by common law of the Courts would afford a safe and unvarying rule. Laches connotes not only undue lapse of time, but also negligence, and opportunity to have acted sooner; and all three factors must be satisfactorily shown before the bar in equity is complete. Other factors of lesser importance sometimes demand consideration—such as the nature of the property involved, or the subject matter of the suit, or the like. As a definition of laches, however, it is sufficiently correct to say that it is the neglecting or the omitting to do what in law should have been done, and this for an unreasonable and unexplained

length of time, and in circumstances which afforded opportunity for diligence.

This definition will be found adequate as a test to be applied to the vast majority of cases. The doctrine embraced in it is in accordance with the principles and the practice of Courts of equity, which have from the beginning held themselves ready to aid suitors who come in good conscience, good faith, and with diligence; and from the beginning they have discountenanced stale demands, and refused relief from the effect of negligence and inexcusable delay."

Now, there can be no doubt about it, this cause has slumbered on the docket of the Court for a long time, sufficient for the Court to presume negligence, and a want of diligence; has the delay been explained, so as to relieve the parties from this presumption? William E. Dickey, the father of two of the plaintiffs, and to whose rights they have succeeded (if any such rights exist), died in 1894, leaving two children of tender age, and from the testimony they are still minors, the widow died in 1905, leaving two small children, and who are still minors of tender years. I have had a strong inclination to dismiss this case, because the defendants will be put at a great disadvantage, on account of the long lapse of time. But only five years had elapsed from the commencement of the action to the death of William E. Dickey; was this sufficient to raise a presumption of neglect? I think not, as some progress had been made in the prosecution of the action; should the Court impute laches to these minors? Under the circumstances I think not; in other words, the minority of the persons above named, have in my opinion overcome the presumption of negligence, arising from the lapse of time.

It is ordered and adjudged:

I. That said original complaint be, and is hereby, amended in the following particulars:

1. By striking out the names of the defendants, F. H. Barber and W. P. Ferguson, as executors of the estate of John Dickey, deceased, in the title of the said action.

2. By making paragraph XII of said original complaint to read as follows, to wit: XII. That the said John Dickey, under said two deeds from S. J. Dickey, of date the 7th day of June, 1872, entered immediately into possession of said tract of land as trustees aforesaid, and so remained up to the time of his death. Said above·mentioned tract of land is described as follows, to wit:

"All that plantation or tract of land known as the Andrew Wherry place, lying in York county, South Carolina, known as Santuc, on the headwaters of Fishing Creek, bounded by lands now, or formerly, of estates of Robert McCreight, D. R. S. Blake and William Wylie and others, and containing one hundred and seventy acres, more or less."

3. By striking out paragraphs XVI and XVII of said complaint.

4. By striking out the 2d and 3d demands in the prayer of said complaint.

II. That the plaintiffs above named have leave to serve upon the above named defendants, within 10 days from the filing of this order, the said supplemental complaint according to the form of the copy thereof served and filed with said notice of motion.

III. That a copy of this order be served with said suppplemental complaint, and that defendants have 20 days thereafter within which to answer or plead to said amended and supplemental complaints. W. A. Holman, Presiding Judge. August 8, 1913.

*Messrs. Henry & McLure, Gaston & Hamilton* and *Marion & Marion,* for the appellants. The latter cite: *Respondents guilty of laches:* 3 Rich. Eq. 484, 485; 64 S. C. 507; 62 S. C. 73; 43 S. C. 441; 67 S. C. 82; 53 S. C. 126; 29 Am. St. Rep. 25; 1 Ohio St. 193; 25 W. Va. 179;

52 N. J. Eq. 1; 30 Atl. 1119; 88 N. C. 72; 18 A. & E. Enc. of L. (2d ed.) 111, and note; 148 U. S. 370; 94 U. S. 806. *Equity and good conscience will not permit action to be revived:* 137 U. S. 566; 145 U. S. 368; 68 Fed. 990; 3 Rich. Eq. 504; 51 S. C. 405; 53 S. C. 463. *Case not properly docketed:* Code Civ. Proc. 276, 314; 42 S. C. 9; 46 S. C. 502. *Procedure:* Code Civil Proc. 170, 335; 67 S. C. 74; 62 S. C. 73. *Laches of trustee imputed to cestui que trusts:* 2 Rich. (19 S. C. Eq.) 412, 424; Car. L. J. 503. *Laches of ancestor and infant heir:* 29 So. Rep. 25; 1 Ohio St. 478; 12 Ohio 193; 25 W. Va. 179.

*Messrs. W. J. Cherry, S. E. McFadden* and *Wilson & Wilson,* for respondents.

April 22, 1914.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This action was originally commenced by service of summons and complaint on defendants on March 4, 1889. The original parties to the action were W. E. Dickey, D. D. Chambers and Marietta Cornwell, plaintiffs, and A. E. Orr, William A. Orr, "Sis" Orr, and F. H. Barber and W. P. Ferguson, as executors of the estate of John Dickey, deceased, defendants. All of the defendants were at that time minors, of tender age, except A. E. Orr, but were properly served, but no guardian *ad litem* was appointed to represent them, and it does not appear that any one was ever their legal representative. The action was brought to recover land and rents and profits. To the complaint a demurrer was interposed by the defendants, A. E. Orr and Barber and Ferguson, as executors, on the ground that two causes of action were improperly united. His Honor, T. B. Fraser, sustained the demurrer, but by his order, dated November 30, 1891, gave the plaintiffs the right to elect upon which cause of action they would go to trial. It does not appear that

any steps were taken since 1892, when notice of election was served, until 1912, when a guardian *ad litem* for certain minor plaintiffs was appointed. William E. Dickey, one of the original plaintiffs, and the party at whose instance the original suit was instituted, died October 17, 1894, having promised the defendant, A. E. Orr, that he would abandon the suit and have the same dismissed. Notice of election was served upon defendants February 11, 1892. W. E. Dickey died October 17, 1894. Two years and eight months elapsed, and the record fails to show that there was the slightest effort on his part to push the action to trial. The present minor plaintiffs-respondents claim under W. E. Dickey.

It appears that the case was first docketed on Calendar 2 in April term of Court, 1889, and carried forward on said Calendar 2 for 26 consecutive terms of said Court of Common Pleas for York county until the October term of said Court, 1897; and it appears that then the following entry was made by the presiding Judge: "Stricken off with leave to restore"—that said cause was dropped from the calendar, and it does not appear on the same until April term of the Court, 1900, and was then placed on the calendar without any endorsement or entry of any kind. It has been carried on the calendar since that time. The record fails to show that any notice of motion to reinstate or restore was ever given. The records show it was stricken off in April, 1897, and three years after, in April, 1900, it appears on the calendar again. The record shows that in April, 1889, on motion of the plaintiff's attorneys, the cause was referred to Jas. F. Wallace, Esq., as special referee; that in May, 1889, Judge Fraser heard demurrer and passed order heretofore referred to. The record further shows that from November 30, 1891, nothing was done until 1912, when a guardian *ad litem* for Frances M. McAuley and other minor plaintiffs was appointed. The record further shows that the attorneys for the plaintiffs

on March 10, 1889, served upon W. D. Orr, the father of W. A. Orr, Hartwell Orr, and "Sis" Orr, minor defendants in the case, that, unless he appear and represent his children within 20 days after the service of said summons, the plaintiffs' attorneys would apply to the Court and have some responsible person appointed as guardian *ad litem* to represent said children; that the record fails to disclose that any guardian *ad litem* was ever appointed, or that any one ever appeared and represented them. It appears from the record affirmatively that Mrs. A. E. Orr thought Dickey had dropped the suit, and that the death of Dickey and R. L. Crook deprives her and the defendants of material and important testimony to make out their defense; that the death of her brother, John C. Dickey, and F. H. Barber, while this suit has not been pressed for trial, deprives her of important evidence that cannot now be supplied. After the death of William E. Dickey on October 17, 1884, in January, 1913, over 18 years after his death, his heirs at law, after due notice to the defendants, asked for leave to amend the complaint in the particulars set out in the notice, and also ask for leave to serve a supplemental complaint, a copy of which was attached and served with the notice. The matter came on for a hearing before Special Judge Holman. The motion was resisted and countermotion made to dismiss the whole action. These motions were based on notice and affidavits. After hearing the motions, the special Judge, Holman, granted plaintiff's motion and refused defendants' motion by an order, which should be set out in the report of the case. From this order defendants appeal and ask reversal by 16 exceptions, and respondents ask to sustain the order of the Judge upon 7 additional grounds. The exceptions, 1, 2, 3, 4, 5, 6, 7, and 8, of appellants complain of error on the part of his Honor in not holding that the plaintiffs-respondents were guilty of laches, which laches is fatal and dismissing to the complaint, and that he was in error in granting the motion

asked for in allowing plaintiffs to amend and serve supplemental complaint, and in not finding and holding that W. E. Dickey in his lifetime had abandoned the action, and plaintiffs claiming under him were barred, and in not holding that the commencement of the action alone would not be sufficient, but, without due prosecution of the same, would not toll the statute of limitations in a Court of law, and would not relieve the parties of laches in a Court of equity. We think that these exceptions should be sustained.

Twenty-four years have passed since the commencement of this action. There is no satisfactory explanation on the part of the respondents of the delay of 21 years in the prosecution of this suit. Some of the parties are dead. The minor defendants never were represented and knew nothing of the proceedings until notice was served on them of application for last order made in the case. A number of witnesses, who could have explained the transactions, are dead, and there is no one to supply their testimony, and it would be a hardship on the defendants to now have to defend and resist a suit that they thought ended and abandoned after this great lapse of time. With the recollection and memories impaired, some witnesses dead, it would be almost impossible to find out what the truth is as to the issues involved; there is no question but that the plaintiffs are guilty of laches; and while, as a general rule, negligence, or laches, cannot be imputed to minors, the record shows in this case that the right of action accrued to them after the death of their ancestor, and that he in his lifetime commenced the suit, and the statute under such circumstances would commence to run in his lifetime, and his death would not arrest the statute in favor of his minor children. The record shows that the minor defendants were served only in 1889, and no steps taken to have them properly and legally represented before the Court, either by their father or plaintiffs' attorneys, in pursuance of

notice served, and during all the years that the cause was
on calendar, or struck off, or restored, they had no one to
represent their interests, and whatever was done in no way
bound them.   The use of due diligence in the prosecution
of this cause was upon the respondents; there is an unsat-
isfactory and inexcusable delay on their part which we
think was caused by their laches.

In *Hunt* v. *Smith,* 3 Rich. Eq. 484, an unexplained delay
of 16 years was held to be fatal.   Circuit Judge Fraser,
acting Associate Justice, and as the organ of the Court,
says in *Langston* v. *Shands,* 23 S. C. 152: "It is earnestly
urged, however, that the presumption of payment was
arrested by the commencement of an action against the
executors of Robert Pitts in 1870 on this bond, and (as
we understand the argument) which was still pending
when the claim was presented here, notwithstanding the
entry of 'struck off' or 'adjourned off' in 1877 at the May
term of the Court."   That latter expression, which was a
very common one used in such cases by the Circuit Judge
alluded to, really had no precedent for its use, as far as we
are informed, never had any other effect than to induce
the clerk to drop the case from the calendar, to be restored
without asking leave whenever requested by any party to
the action.   The words had no meaning, and were so
regarded by the profession.   If the entry "struck off" had
been made, and this is the strongest way in which it can be
put as against the claim, the case could have been restored
to the calendar on motion made within a reasonable time.
Nearly seven years had elapsed since the entry was made
on Calendar 1 before any further steps were taken to sub-
mit this claim to the Court.   The case thus stricken from
the calendar or "adjourned off" cannot have such dormant
life as to justify a revival of it now.   In *Kennedy* v.
*Smith,* 2 Bay, 414, it is said that "all the cases quoted in
Blackstone's Commentaries are strong in point and prove
that leaving a chasm in the proceedings, without regular

continuance from time to time, will amount to a discontinuance. But the lapse of seven years is so great a laches on the part of the plaintiff in this action that nothing on her part can cure it."

In this case we see nothing to excuse the laches, and there is nothing in the way in which suit is brought on this bond and allowed to drop to arrest the presumption of payment; this Court, therefore, holds that there has been, as to this bond, a presumption of payment, arising from the lapse of time a force equal to the bar of the statute of limitations. *Boyce* v. *Lake,* 17 S. C. 481, 43 Am. Rep. 618; *Shubrick* v. *Adams,* 20 S. C. 49. This same doctrine is laid down in *Babb* v. *Sullivan,* 43 S. C. 441, 21 S. E. 277; *Wagner* v. *Sanders,* 62 S. C. 73, 39 S. E. 950; *Person* v. *Fort,* 64 S. C. 508, 42 S. E. 594; *Ex parte Baker,* 67 S. C. 82, 45 S. E. 143.

His honor, Special Judge Holman, was in error in granting the order he did, and in not granting the motion of defendants to dismiss the action. Order appealed from reversed.

Reversed.

Mr. Justice Hydrick, *dissenting.* As briefly as possible I propose to state the reasons why I think the order of the Circuit Court should be affirmed. As the action is dismissed for laches in the prosecution thereof after it was commenced, the delay, the facts and circumstances causing it, and the consequences of it should all be kept clearly in mind. Therefore, it is necessary to state the history of the case. It is an action to recover real estate and the rents and profits thereof, commenced on March 4, 1889, by W. E. Dickey, D. D. Chambers, and Marietta Cornwell, as plaintiffs, against A. E. Orr, William A. Orr, Hartwell Orr, and "Sis" Orr, as devisees of the land in dispute, under the will of John Dickey, and F. H. Barber and W. P. Ferguson, as executors of the will of John Dickey. It

is alleged that John Dickey held the title to the land as trustee for the plaintiffs; that for a number of years prior to his death, he collected the rents and profits thereof, and did not account for them; that he devised the land to A. E. Orr for life, with remainder to her children, William Hartwell, and "Sis," who are infants under the age of 14 years, and that A. E. Orr is in possession thereof.

The case was docketed at the April term, 1889, on Calendar 2, and was continued on that calendar until the October term, 1897, when the following entry was made by the presiding Judge: "Stricken off, with leave to restore." It was dropped from the calendar, but was restored thereto at the April term, 1900, and has been continued thereon ever since.

By consent order, dated April 18, 1889, the issues of law and fact were referred. A. E. Orr and the executors of John Dickey demurred to the complaint on the ground that several causes of action were improperly united therein. By order dated November 30, 1891, the demurrer was sustained, and the plaintiffs were required to elect which cause of action they would try, and were given leave to apply for an order to amend their complaint accordingly. On February 12, 1892, the plaintiffs served notice that they elected to try the cause of action against the Orrs for the recovery of the land, and that they would apply at the next term for an order allowing them to amend their complaint accordingly. It appears that nothing further was done in the cause, until the order which is the subject of this appeal was applied for, in January, 1913. In the meantime, on October 17, 1894, W. E. Dickey, one of the plaintiffs, died, intestate, leaving as his heirs his widow and two infant children, the plaintiffs, Frances M. McAuley and William D. Dickey, both of whom are still infants. His widow married Marion E. Audrey, and died, intestate, leaving her husband and two children by him, Claire and Inez, both of whom are infants. On January 24, 1913, the children of

W. E. Dickey, by their guardian *ad litem,* and Marion E. Audrey, and his children, by their guardian *ad litem,* moved for an order substituting them as parties plaintiffs in the place of W. E. Dickey, and for leave to file a supplemental complaint. At the hearing of this motion, the defendants moved to dismiss the complaint for failure to prosecute the action. After hearing the affidavits pro and con, the Court granted the plaintiffs' motion. From that order this appeal was taken.

The defendants objected to the order on two grounds. The first is that W. E. Dickey agreed with Mrs. Orr, a short time before his death, that he would drop the action. In the first place, Dickey could not have discontinued the action, except by consent of his coplaintiffs. Chambers says he consented, but Mrs. Cornwell swears she never consented, and there is no evidence that she did. In the next place, the evidence is wholly insufficient to sustain the allegation that Dickey ever made any such agreement. There are only two witnesses to the alleged agreement, Mrs. Orr and Chambers. Mrs. Orr's testimony is clearly incompetent under section 438 of the Code of Procedure. Chambers says, in his affidavit dated March, 1913, that not long before his death Dickey told him that he was willing to drop the case, and, if it was agreeable to him, it would be dropped; that he agreed, and thought it had been dropped. But evidently he was mistaken. Because, in an action, commenced in 1894, by Chambers and Dickey against F. H. Barber, as executor of the will of John Dickey, for the rents and profits of the land in dispute, Chambers testified, on May 17, 1899, which was nearly five years after Dickey's death, as follows: "Mrs. Orr is my mother. I know she claims this land under the will of John Dickey. W. E. Dickey said if Mr. Orr would pay him what he owed him in the store he would abandon any suit for the land, and witness said, if he would do so, he (witness) would also abandon the suit, as Mrs. Orr was his mother. * * * Mr.

Orr owed W. E. Dickey several hundred dollars on account of store account. It has not all been paid, and the suit for the lands has not been abandoned." It appears from this that there was some effort to compromise the case, and Mr. W. B. Wilson, Sr., who was one of the attorneys for the plaintiffs, and had active charge of the case, swears that he was advised of some efforts to compromise, and for that reason the case was not actively pressed to trial. But it is equally clear, from the testimony of Chambers, that as late as May, 1899, no compromise had been effected, and the action had not then been abandoned. Indeed, I do not see how any compromise could have been made after the death of W. E. Dickey, because his infant heirs were not before the Court.

The objection on the ground that defendants have lost valuable evidence by the delay is equally untenable. The principal evidence which they claim to have lost is that of R. L. Crook, who died in 1890, W. E. Dickey himself, who died in 1894, and J. C. Dickey, who died in 1895. Surely no one would contend for a moment that laches could be imputed to the plaintiffs up to the time of the death of W. E. Dickey, especially in view of the testimony that the parties were trying to effect a compromise, which is considered sufficient to excuse the laches of a plaintiff in bringing an action. 18 A. & E. Enc. L. (2d ed.) 112. It is common practice in this State to continue cases on the calendars pending negotiations for a compromise.

Let us next consider what effect, if any, striking the case from the docket should have in determining the rights of the parties. At the time this was done, Dickey had been dead three years, and his infant children had succeeded in part to his interest in the land and in the action for its recovery, but they had not been made parties. No order should have been made in the cause until they were made parties and properly represented. Again, a Judge has no right to strike a cause from the docket, except by consent

of the parties, or upon motion, after notice and a hearing. In this case there is no pretense that it was stricken off by consent or upon motion. Therefore, the entry, "Stricken off with leave to restore," was without authority of law. But, even if the entry was properly and regularly made, what was its effect? Nothing more than that any party to the cause might have it restored to the docket at pleasure. Why should a party be required to move for leave to restore, when leave to restore is already incorporated in the order to strike off? In the case cited by Mr. Justice Watts, the order was "struck off." There no leave to restore was made a part of the order. Here it was. Therefore this case was properly restored to the calendar, without motion, in April, 1900, and has been properly continued on it ever since.

The question then arises: What are the rights of the parties in such a case? At common law the death of a party before trial abated the action, and his representatives had to commence a new action. But the inconvenience and hardship which resulted from this rule have been remedied by statutes. Section 170 of the Code of Procedure provides that no action shall abate by the death of a party, if the cause of action survive; and, in case of death, the Court, on motion, at any time within one year thereafter, or afterwards, on a supplemental complaint, may allow the action to be continued by his successor in interest. The same section further provides that, at any time after the death of a party plaintiff, the Court, upon notice to such person as it may direct, upon application by any person aggrieved, may, in its discretion, order that the action be deemed abated, unless the same be continued by the proper parties, within a time to be fixed by the Court, not less than six months nor exceeding one year from the granting of the order. This section has been construed and applied by this Court in several cases.

In *Parnell* v. *Maner,* 16 S. C. 348, plaintiff commenced an action against J. W. Lawton, on March 5, 1868, on a promissory note. The case was docketed for trial, and remained on the docket, until the June term, 1870, when it was marked on the docket, "abated by the death of the defendant;" Lawton having died on March 8, 1870, leaving a will of which Maner was executor, but he did not qualify as such until 1879. On October 27, 1880, 12 years after the action was commenced, plaintiff moved for leave to file a supplemental complaint, which was refused. On appeal, this Court held that, under the provision of the Code above mentioned, the filing of a supplemental complaint in such case is a matter of right, and that it is not necessary to obtain leave of the Court to do so, and that the entry on the docket, "Abated by the death of the defendant," was clearly erroneous, and should be disregarded. So, I think, the entry in this case, "Struck off with leave to restore," was clearly unauthorized, and should be disregarded. In that case, as in this, the objection was made that plaintiff had been guilty of laches, but the Court held that he had not, but it was also held that the right to file a supplemental complaint in such a case cannot be defeated by laches, because the Code prescribes no limit of time within which an action may be so continued, and further because a defendant in such a case may protect himself against unreasonable delay on the part of the representatives of a deceased plaintiff in continuing the action by supplemental complaint, under the last provision of that section (that is, by obtaining an order that the action shall be deemed abated), unless continued by the proper parties within the time therein prescribed. Mr. Justice McIver, speaking for the Court, said: "It was argued here that, by lapse of time, the plaintiff has lost the right which he once may have had to continue the action by supplemental complaint against the representative of the deceased defendant. To say nothing of the fact that a large part of the delay

16—97

was occasioned by the failure of the present defendant to qualify as executor of the deceased defendant, it will be observed that, while section 144 does limit the time within which an action may be continued by motion to one year, it does not prescribe any limit to the time within which it may be continued by supplemental complaint after the expiration of one year. In New York it has been held, in the case of *Bornsdorff* v. *Lord,* 41 Barb. 211, that the supplemental complaint provided for by section 121 of the Code of that State stands in the place of the bill of revivor under the old system of equity pleading; and in a note to the case of *Pendleton* v. *Fay,* 3 Paige (N. Y.) 205, the case of *Lyle* v. *Bradford,* 7 T. B. Mon. (Ky.) 115, is cited to sustain the proposition that 'lapse of time from filing the original bill, omission to serve the original defendant with process, and a final disposition of the cause as to the other defendants are no grounds of objection to the bill of revivor in such case.' In addition to this, section 144 of our Code contains a provision by which a defendant may protect himself from unreasonable delay on the part of the representatives of a deceased plaintiff in continuing the action by supplemental complaint; and, while there is no express provision in that section of the Code by which the representatives of a deceased defendant can protect themselves from unreasonable delay on the part of the plaintiff in continuing the action, yet it has been held in New York that in such a case the representatives of a deceased defendant may prevent unreasonable delay on the part of the plaintiff in continuing the action against them by moving for an order discontinuing the action, unless the plaintiff shall, within a specified time, consent to an order continuing the action. *Keene* v. *La Farge,* 16 How. Prac. (N. Y.) 377."

To the same effect is *Arthur* v. *Allen,* 22 S. C. 432, where an action, commenced in October, 1867, was continued by supplemental complaint filed 15 years afterwards,

to wit, in June, 1882. In *Best* v. *Sanders,* 22 S. C. 589, a suit for partition was commenced in 1854. In February, 1855, the chancellor declared the rights of the parties and ordered the writ to issue. The writ was issued, but, on account of disagreement among the commissioners, no return was ever made. In February, 1856, the cause was marked "ended" on the docket. In 1883, 29 years after the action was commenced, and 23 years after the original plaintiff, who was an infant when the action was commenced, had attained her majority, which was in 1860, she moved for leave to file a supplemental complaint against the original parties and the heirs of those deceased. Her motion was refused. On appeal, the order was reversed, and this Court held: "That the evidence showed that the entry on the docket, if not a mistake, was premature, and that the case was never ended; that, under the old equity practice, the right to revive would exist without any well-defined limit in point of time, and that it might have been accomplished by a bill in the nature of a bill of revivor and supplement; that this right has been substantially preserved by the Code of Procedure (section 142); that this is a question relating merely to pleading, and does not affect the merits, but there is no authority for applying the statute of limitations to the right to institute such proceedings, although the relief therein demanded may be barred."

In *Bryce* v. *Massey,* 35 S. C. 127, 14 S. E. 768, the action was commenced in 1872 by T. W. Dewey. It remained on the docket until the death of Dewey, when it was dropped on account of his death. In 1882 or 1886 (there is a discrepancy in the report of the case as to the date), Bryce was appointed administrator of Dewey's estate and filed a supplemental complaint. Massey contended that, as the supplemental complaint was not filed until more than 10 years had elapsed after the death of Dewey, the lapse of time was a bar to the right to revive the original action. Mr. Chief Justice McIver, speaking

for the Court, said: "We think it only necessary to refer to the cases of *Parnell* v. *Maner,* 16 S. C. 350, and *Best* v. *Sanders,* 22 S. C. 589, to show that the plaintiff was not barred by lapse of time from filing his supplemental complaint."

It seems to me that these cases are conclusive of the case at bar. I do not see how the Court can deny the plaintiffs the right to file their supplemental complaint without over-ruling them. While I do not contend that, under the construction given to the provisions of section 170 of the Code by this Court in the cases above cited, an infant would have any rights superior to those of an adult, because the same right is given to all litigants by the statute, yet if that were so, and the equitable doctrine of laches were applicable, it seems to me that the fact that the plaintiffs were and are still infants would prevent the application of that doctrine. For I think the principle is too well settled to require argument or citation of authority that laches will not be imputed to infants, unless required by statute or some positive rule of law. "In the absence of any positive provision of law to the contrary, an infant will not be prejudiced by lapse of time, nor is laches ordinarily imputable to infants to their prejudice." 22 Cyc. 512. In each of the cases above cited, in which the defense of laches was invoked and denied, the parties were adults, and, in at least one of them, a much greater time had elapsed than in the present case.

In *Best* v. *Sanders* it was squarely ruled that there is no authority for applying the statute of limitations to the right to file a supplemental complaint, and the same principle was reiterated in *Bryce* v. *Massey.* In that case, if the plaintiff had not been allowed to continue the action by supplemental complaint, he could not have recovered, for a new action would have been barred by the statute. The principle of these cases was reaffirmed by this Court in *Sims* v. *Davis,* 70 S. C. 374, 49 S. E. 872.

It follows, therefore, that those cases in which the right to commence an action has been held to be barred by laches are not applicable where the right of a party to carry it on, after it has been commenced without laches, is invoked. Of course, if the original plaintiffs were guilty of laches, in commencing their action, that defense would avail against their successors in interest, even though they are infants, as well as it would against the original plaintiffs, for laches in commencing the action would have been a bar to it, when it was commenced. But there is no contention here that the action is barred by laches in commencing it.

In the case cited by Mr. Justice Watts, the parties were *sui juris,* and they were denied relief because they were guilty of laches in commencing the action or proceeding.

Mr. Justice Gage did not sit in this case.