12820

STRIBLING v. FRETWELL

(154 S. E., 415)

*Messrs. B. F. Martin* and *Greene & Earle,* for appellant,

*Messrs. Watkins & Prince,* for respondent,

January 29, 1930.

The opinion of the Court was delivered by Mr. Justice Cothran.

This is an appeal from an order of his Honor, Judge Sease, dated December 13, 1927, refusing a motion by the plaintiff to redocket the case and granting a motion by the defendant to dismiss the case upon the ground of unreasonable delay and laches. The order of Judge Sease is formal, stating no more than is above stated.

The motions were made upon the complaint, answer, and affidavits submitted pro and con.

The motion of the plaintiff to redocket the case will fall by the disposition which we think should be made of the defendant's motion to dismiss, and accordingly it only will be discussed.

The facts as we gather them from the pleadings and affidavits, may be summarzied thus:

About the year 1901, the plaintiff, Stribling, and the defendant, Fretwell, entered into a business arrangement in reference to the purchase of certain lands lying on both sides of the Savannah River, some of it in Anderson County, S. C., and some in Elbert and Hart Counties in Georgia. It was conceived, as the event has justified, that the lands were valuable on account of the water rights which their ownership carried in a potential development of water power on the Savannah River.

The plaintiff, Stribling, contends that he was to furnish his services as a surveyor, and, in acquiring deeds to the property, the defendant, Fretwell, furnishing the necessary funds, and that he (Stribling), in consideration of his activities, was to be interested to the extent of one-fifth in the lands so acquired.

The defendant, Fretwell, contends that he employed Stribling to perform these services and paid him in full therefor; that there was no agreement between them that Stribling should acquire any interest whatever in the lands so acquired.

A number of tracts of land were thus acquired, some fifty-five or more, all of the titles to which were made to Fretwell and paid for by him; Stribling not being named as grantee in any of them.

The parties being in disagreement as to the terms of the agreement between them, each maintaining his contention as above stated, on *December 24, 1904,* Stribling instituted an action in the Court of Common Pleas of Anderson County, against Fretwell, to recover one-fifth undivided interest in the lands, or to have a trust to that extent declared therein in his favor. The defendant answered, setting up his contention as stated, and the case, it appears, was docketed on Calendar 2.

On January 1, 1910, five years after the case was commenced and placed on the calendar, counsel for Stribling served upon opposing counsel notice of a motion for an order submitting certain issues to a jury, and on May 10, 1910, served a futher notice of a motion for issues out of chancery to a jury. Thereupon counsel for Fretwell served notice of motion for an order for such issues as they deemed proper. Nothing appears to have come out of either of these notices.

On January 14, 1911, six years after the institution of the action, the attorneys, looking to a trial of the case, entered into an agreement as to the introduction of certain deeds by record, instead of the production of the originals upon the trial.

The case was continued from term to term on the calendar, upon what gounds does not appear. At the June term of the Court in 1916, nearly twelve years after the action had been commenced in December, 1904, his Honor, Judge

Prince, presiding, in the presence of counsel for Stribling, in open Court, ordered the case stricken from the docket, as it had been there long enough. There appears no other entry upon the calendar than "struck off," although one of the attorneys for Stribling, who was present at the time, remembers very distinctly and swears positively, that the Judge coupled verbally with his order to strike out, "with leave to restore."

On February 21, 1927, a sale of the property by Fretwell to certain parties, being obstructed by the record of the notice *lis pendens* filed by Stribling in December, 1904, counsel for Fretwell served upon Stribling a notice that he would move the Court on February 24th for an order dismissing the complaint upon the ground of the failure of Stribling to prosecute the action and his laches in the matter. For some reason this motion was abandoned.

Notwithstanding this notice of counsel's attitude towards the case, and assuming that Judge Prince's order to strike off was accompanied by "leave to restore," counsel for Stribling took no action in the premises until November, 1927, nearly a year thereafter, and eleven and a half years after the case had been stricken from the calendar. In the meantime, Fretwell and his counsel had naturally the right to consider that the case was dead.

The transactions involved occurred nearly a third of a century ago. The recollections of witnesses are dimmed by time. A material change has occurred in the ability of the defendant to present his defense to the Court. Three of his most important witnesses have died since the case was stricken from the docket. His counsel charged with the defense of the case at the time it arose have either died or been promoted to the bench and are no longer available. His documentary evidence was partly destroyed by a fire in the office of one of his counsel in 1919. Other documentary evidence was retained by one of his counsel, now Judge Bonham, until he gave up the practice of law, at which

time, considering the case long since ended and the data not valuable, it was destroyed or lost. It would be most inequitable now to allow the plaintiff to have the advantage of such a natural and inevitable change in the ability of the defendant to present his defense.

The excuses of the plaintiff for his delay and laches are inadequate and without merit. They are: (1) The case was continued from term to term until 1916 by mutual consent. (2) There was an effort to arbitrate the issues. (3) That some people hoped to intervene and work out a settlement of the case. (4) That the property in question had not been .sold and was of peculiar nature. (5) That plaintiff never considered the case abandoned.

As to the first, it does not appear that defendant ever asked for a continuance and such continuances ceased in 1916.

As to the second, this effort seemed to be confined to the plaintiff. The defendant never consented to arbitrate and his attorneys do not recall any such effort. As to the copy of the letter of plaintiff's counsel referring to an arbitration, it will be observed that there is no proof of its receipt by Gen. M. L. Bonham. No reply of the addressee was received. The letter was written on March 9, 1912, and states that, after ten days from that date, the effort to compromise "will be finally declared at an end." It is hardly reasonable to suppose that any hope of compromise was entertained for fifteen years after such a letter, in the absence of any other testimony to that effect.

As to the hope of third parties intervening to work out a settlement: This hope seems to have been entertained by the plaintiff only. The defendant never had any such idea, and there was no basis for any such hope on the part of the plaintiff or his counsel. It will be observed that the affidavits referring to this matter are indefinite and inadequate. No such persons are named and no dates given. Neither is it

shown that any such idea was communicated to the defendant.

As to the fourth excuse: The property had not been sold when the suit was brought, and, if salability was a consideration, the proper thing would be to prosecute the action to a conclusion before a sale could or should be made.

As to the fifth excuse: It is too late now for plaintiff to make this claim. His actions and those of his attorneys, certainly since June, 1916, speak louder than his words. Certainly all other parties concerned had a different opinion, notably defendant and his counsel, who did not even think it necessary or advisable to preserve the records in their possession. Such must have been the opinion of defendant's other attorneys, who on February 24, 1927, gave notice to have a *lis pendens* canceled, and who doubtless upon investigation of the facts deemed the action abandoned and the prosecution of the motion unnecessary.

The law of the case appears clearly to sustain the order of his Honor, Judge Sease:

In *Langston v. Shands,* 23 S. C., 149, it was contended that an action on a bond begun in 1870 and "struck off" or "adjourned off" in 1877 was still alive and in 1883 could be invoked to arrest the presumption of the payment of the bond. The Court said:

"Nearly seven years had elapsed since this entry was made on Calendar No. 1, before any further steps were taken to submit this claim to the Court. The case thus stricken from the calendar, or 'adjourned off,' cannot certainly have such dormant life as to justify a revival of it now. In *Kennedy v. Smith,* 2 Bay, 414, it is said: 'That all the cases quoted from 3 Blackstone's Commentaries are strong in point, and prove that leaving a chasm in the proceeding, without regular continuance from time to time, will amount to a discontinuance. But the lapse of seven years is so great laches on the part of the plaintiff in this action that nothing on her part can cure it.' "

In *Babb v. Sullivan,* 43 S. C., 436, 21 S. E., 277, 279, a case cited in the brief of appellant's attorneys, it was held that a delay of nine years and six months on the part of the defendant in moving to amend an execution amounted to such laches as effectively precluded him from obtaining the relief which he sought. The Court said:

"As we understand the doctrine of estoppel by laches, the facts in this case would justify us in holding that even a shorter delay than nine years and six months, inexcusable or unexplained, would have furnished the Circuit Court with sufficient grounds for refusing the order moved for. Delay is not the sole factor that constitutes laches. If it were so, some period fixed by statute or by the common law of the courts would afford a safe and unvarying rule. Laches connotes not only undue lapse of time, but also negligence, and opportunity to have acted sooner, and all three factors must be satisfactorily shown before the bar in equity is complete. Other factors of lesser importance sometimes demand consideration, such as the nature of the property involved, or the subject-matter of the suit, or the like. As a definition of 'laches,' however, it is sufficiently correct to say that it is the neglecting or the omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time, and in circumstances which afforded opportunity for diligence.

"This definition will be found adequate as a test to be applied to the vast majority of cases. The doctrine embraced in it is in accordance with the principles and the practice of courts of equity, which have from the beginning held themselves ready to aid suitors who come in good conscience, good faith, and with diligence; and from the beginning they have discountenanced stale demands, and refused relief from the effect of negligence and inexcusable delay. * * *

"Laches being the resultant of a combination of negligence, lapse of time, and loss of opportunity, by as much,

therefore, as negligence and knowledge of opportunity may vary in degree, by so much will the period of time vary in length. Speaking generally, it may be said that, the greater the negligence and the knowledge, the less will be the time. hence the great differences in the length of the delay which the courts have held to work laches, varying from a few months to any number of years less than 20."

In *Ex parte Baker* (*In re Buist, Rec., v. Melchers*) 67 S. C., 74, 45 S. E., 143, 145, an action in equity was begun in 1873 against the directors of an insolvent Building & Loan Association to recover losses of the association alleged to have been caused by the negligence of the directors. There were some proceedings in the cause, including an appeal to the Supreme Court, on the question whether Calendar No. 2 was the proper calendar. The remittitur went down in 1895. The cause remained dormant on the Calendar No. 2 until 1902. In that year the plaintiff moved to bring the cause to trial. The Circuit Judge dismissed the bill for laches. The Supreme Court, affirming the lower court, said:

"Of course, now and then delays are very necessary, and no exception is taken to the same. But undoubtedly cases in equity are allowed by the parties to remain on the calendars of the Court undisposed of beyond all patience and all safety. The very object of courts is to provide an expeditious tribunal for the enforcing the rights or redressing the wrongs of litigants. To allow causes to remain on the calendar of the courts for years and years, with no movement by the parites, and without even an order being taken, presents a strange spectacle: Parties die, witnesses die or move away, records are misplaced, private energy is weakened, and thus the wheels of justice are clogged. When complaint is made to the Court of such slumbering and such ill effects resulting from such sleep, it may result, as in this case, with a wholesome effect to have an order passed dismissing such

cases for want of prosecution, or, in other words, because of the laches of plaintiff litigants."

In *McAuley v. Orr,* 97 S. C., 214, 81 S. E., 489, 490, the action was to recover certain real estate and the rents therefrom. It was begun in 1889. There was a demurrer and some orders taken, and the case stayed on the calendar until 1897, when it was "stricken off with leave to restore." It appeared on the calendar again in 1900. Nothing further was done until 1912, when plaintiff moved the Court for leave to serve a supplemental complaint and defendants moved to dismiss the action for laches. The Supreme Court cited the cases of *Babb v. Sullivan* and *Ex parte Baker, supra,* and held that the Circuit Judge was in error in refusing the motion to dismiss the case. The following finding of the Court is particularly applicable to the case at bar:

"Twenty-four years have passed since the commencement of this action. There is no satisfactory explanation on the part of the respondents of the delay of 21 years in the prosecution of this suit. Some of the parties are dead. The minor defendants never were represented and knew nothing of the proceedings until notice was served on them of application for the last order made in the case. A number of witnesses, who could have explained the transactions, are dead, and there is no one to supply their testimony, and it would be a hardship on the defendants to now have to defend and resist a suit that they thought ended and abandoned after that great lapse of time. With the recollection and memories impaired, some witnesses dead, it would be almost impossible to find out what the truth is as to the issues involved; there is no question but that the plaintiffs are guilty of laches."

The doctrine of these cases was reaffirmed and applied in the recent case of *Thomas v. MacNeill,* 138 S. C., 86, 135 S. E., 643, 645, in which an action was held barred for laches and staleness of demand nineteen years after an alleged release was executed and five years after the death of the party executing it. The Court held:

"In our view, the petitioner is effectually barred by laches or the staleness of his demand. Strictly speaking, there are some points of distinction between laches and staleness of demand. 'Laches' has been defined as 'the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done' (21 C. J., 210) ; and as 'the neglecting or the omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time, and in circumstances which afforded opportunity for diligence' (*Babb v. Sullivan,* 43 S. C., 436, 21 S. E., 277)."

Numerous other supporting authorities are cited in the opinion of the Court.

We think that the motion was largely in the discretion of the Court and that the circumstances fully justify his exercise of it.

The judgment of this Court is that the order appealed from be affirmed.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE CARTER dissent.

MR. JUSTICE CARTER (dissenting) : This an action by John V. Stribling, as plaintiff, against the defendant, Joseph J. Fretwell, was commenced in the Court of Common Pleas for Anderson County, December 24, 1909, for the recovery of an alleged interest in various tracts of land alleged to have been acquired pursuant to an agreement between the parties for the purpose of water power development, upon the Savannah river, at Cherokee Shoals and Middleton Shoals; it being agreed, according to the allegations of the complaint, "that plaintiff should do all the preliminary engineering work and make negotiations for the purchase of the property necessary to be acquired to make available the development of said water powers, defendant agreeing with plaintiff to finance the enterprise, to furnish money to pay for all expenses and for all the property aforesaid necessary to be

acquired to make available the said development." Under this alleged agreement the plaintiff was to be allowed the sum of $3.00 per day "to cover his personal expenses, which was one item of the general expense," and all property acquired under the alleged agreement was to be held for the mutual interest of the parties, plaintiff and defendant, and in trust for the partnership alleged, "the defendant to put up the money for acquiring said lands and property and said money to be paid out for said lands and property as partnership funds, and the title to be taken to plaintiff and the defendant as partners or tenants in common, the defendant to be entitled to four-fifths interest and the plaintiff to one-fifth interest as a tenant in common of all property that should be acquired for the purposes named within the contour lines of the plaintiff's survey." According to the allegations contained in plaintiff's complaint, pursuant to this alleged agreement plaintiff did a vast amount of the preliminary engineering work of making the negotiations and continued to carry out his part of the contract until he was prevented from doing so on account of the material breach of the same by the defendant, and that the defendant has wrongfully taken title in his name to the property acquired, instead of taking title jointly in the name of the plaintiff and defendant; title to numerous tracts of land having been wrongfully acquired by the defendant in this manner, that is, according to the allegation of the plaintiff, it being alleged that the property thus acquired being very valuable for development of water power purposes. The plaintiff in his complaint asks that all of the lands and property in question "be impressed with a trust in his favor to the extent of one-fifth thereof as a tenant in common; that all of said property be declared to be property of the plaintiff and defendant jointly under their said agreement; and that the defendant be enjoined from selling said property or any portion thereof, and that he be required to execute a deed to plaintiff for his interest therein."

On January 27th, 1910, a *lis pendens* covering all of the lands involved was filed and recorded in the office of the Clerk of Court for Anderson County.

By answer, the defendant denied the material allegations of the complaint, and alleged that the work performed by the plaintiff as engineer in connection with the survey of the lands involved was performed as an employee of the defendant and not as his partner in the enterprise, and that title to the property was rightfully taken in the name of the defendant. The defendant also set up the defense of the statute of limitation and the statute of frauds.

The case comes to this Court on appeal from an order of his Honor, Judge T. S. Sease, refusing to grant a motion by the plaintiff to allow the case to be redocketed and in granting a motion made by the defendant to dismiss the case, which order of Judge Sease is dated December 13, 1927, and is in the following language: "Two motions: One by plaintiff to redocket and one by defendant to dismiss for unreasonable delay and laches—motion of plaintiff is refused and motion by defendant is granted. So ordered."

Appellant's exceptions, which will be considered as a whole, impute error to the Circuit Judge in refusing plaintiff's motion to redocket the case and in granting defendant's motion to dismiss the case for unreasonable delay and laches.

In order to pass upon the questions raised, it is necessary to refer briefly to what transpired concerning the case from the time the action was instituted to the date when the order appealed from was issued.

According to the transcript of record, as stated, the action was commenced December 24, 1909. A *lis pendens* covering all of the lands involved was filed and recorded in the office of the Clerk of Court of Anderson County, January 27, 1910. When answer to the complaint was served does not appear from the record. On January 1, 1910, plaintiff's attorneys served on defendant's attorneys notice of motion for issues to the jury, and later, May 14, 1910, plaintiff's

attorneys served another notice of motion for issues out of chancery to the jury. Following this action on the part of plaintiff's attorneys the defendant's attorneys served notice of motion for an order submitting other issues to the jury. Later, January 14, 1911, the attorneys for the parties litigant entered into a written agreement with reference to the introduction by both parties of all deeds and options in their possession without requiring formal proof and also for the introduction of certified copies of recorded deeds and options. The case was docketed for trial in the Court of Common Pleas, and continued from term to term, until June term, 1916, at which term his Honor, George E. Prince, Circuit Judge, presided. From that date it appears that the case was dropped from the calendar, the reasons for which we shall hereinafter advert to. On February 21, 1927, defendant served upon the plaintiff a notice to the effect that the defendant would move before Judge Featherstone on the 24th of February, 1927, for an order dismissing the complaint in the action "on the ground of the failure of plaintiff to proceed in the cause or prosecute the same and his laches in the prosecution of the case." However, it appears that this motion was abandoned. It was not brought before the Court.

November 18, 1927, the plaintiff, acting through his attorneys, served a notice both upon the defendant and upon the defendant's attorneys to the effect that the plaintiff would on the 23rd of November, 1927, move before his Honor, Judge T. S. Sease, presiding Judge, at Anderson, for an order restoring the case to Calendar No. 2 for trial, the motion to be based upon the affidavits of the plaintiff and his attorneys, B. F. Martin and G. B. Greene and also upon the pleadings and record in the case. Before the hearing was had on this motion, defendant served notice of motion for an order dismissing the complaint in the case and decreeing the action abandoned "by reason of unreasonable delay and negligence on the part of the plaintiff in the prosecution of

said action and on account of plaintiff's laches therein."
This motion was based upon the affidavits of the defendant
and Hon. M. L. Bonham, now Circuit Judge, Hon. H. H.
Watkins, now United States District Judge, and T. Allen,
Esq., an attorney of the Anderson bar. The defendant also
gave notice that plaintiff's motion to restore to the Calendar
would be opposed. The two motions were heard together,
resulting in the order of Judge Sease above mentioned, re-
fusing plaintiff's motion to restore to the Calendar for trial
and granting defendant's motion "to dismiss for unreason-
able delay and laches."

Inasmuch as the ruling of his Honor, Judge Sease, was, to
a great extent, based upon the affidavits before him, I shall
quote at length from these affidavits. In this connection I
desire to state that, while there is conflict in the statements
of the plaintiff and defendant, I find little or no conflict in the
facts stated in the affidavits of those who represented the
parties litigant in the case, B. F. Martin and G. B. Greene,
worthy and distinguished members of the bar of this state,
and of counsel for the plaintiff, Hon. M. L. Bonham and
Hon. H. H. Watkins, beloved and highly distinguished mem-
bers of the judiciary, and T. Allen, Esq., an esteemed and
distinguished member of the South Carolina bar, formerly
of counsel for the defendant, all of whom this Court holds in
very high esteem and for whom the Court entertains the
highest regard. Even where an apparent conflict appears, it
can easily be explained by the fact that some time has elapsed
since the commencement of the action, and men possessed of
the best of memory cannot be expected to remember the de-
tails of such transactions in every instance.

The affidavit of Mr. Martin, of counsel for the plaintiff,
was as follows:

"Personally appeared before me B. F. Martin, who, being
duly sworn, says that on and prior to the 24th day of De-
cember, 1909, and until about September 1, 1911, he was
a member of the law firm of Martin & Earle, and after that

date and for several years he was the senior member of the law firm of Martin, Greene & Earle, at Anderson, S. C.; that the deponent prepared the complaint in the above-entitled action and had the active management of the same until about January 1, 1913, some time after his removal from Anderson to Greenville, S. C.; and that after the last-named date, although deponent has had frequent conferences with his said law partners and plaintiff, and others, upon various phases of said case, the active management thereof has been by Messrs. G. B. Greene and C. B. Earle, the other two members of the last-named firm.

"That this action was commenced by the service of summons and complaint on December 24, 1909; that the defendant, through his attorneys, Messrs. Bonham, Watkins & Allen, of Anderson, S. C., and Mr. Geo. C. Grogan of Elberton, Ga., answered the said complaint; and that on June 9, 1910, plaintiff, through his attorneys, served an amended complaint, which with defendant's answer made up the pleadings in said action.

"That on May 14, 1910, plaintiff, through his attorneys, served notice of a motion to submit issues to a jury; that within due time the defendant, through his attorneys, served notice of other issues that would be submitted on the part of the defendant; that on January 14, 1911, attorneys for both plaintiff and defendant signed a stipulation or agreement whereby it was agreed that all deeds and options might be introduced in evidence without formal proof of execution of same, and that certified copies of all recorded deeds, mortgages, and options might be treated as originals, and introduced without proof or formal execution thereof, etc.; and that said action stood for trial at the next term of the Court of Common Pleas for Anderson County.

"That the real estate, which is the subject of said action, was at that time and still is of very great value, as it is necessary for the development of the water power at Middleton Shoals, on Savannah river, it being practicable, as de-

ponent is informed and believes, to develop at that point one of the greatest water power plants on the Savannah river; that on account of the great amount involved, and on account of the public interest in said litigation, as well as in the development of said water power, the friends of the two litigants, as well as the attorneys in the case, began to consider ways and means by which the two litigants might be brought together and the litigation ended by way of compromise or settlement out of Court.

"That before said case could be brought to trial and for several months after issue joined, numerous efforts were made by people interested in the litigation, either as attorneys or as friends of the litigants, but no agreement to settle the case could be reached at that time; that about the first of the year 1912, the parties agreed upon a board of arbitrators who should take the matter in charge and settle the entire litigation between Mr. Fretwell and Mr. Stribling, the arbitrators agreed upon being Gen. M. L. Bonham, Maj. Wm. J. Stribling and deponent; that it appeared for a while that the matter would be arbitrated in this manner, but on account of one objection or another, articles of agreement were never signed by the parties and arbitration of the matters in dispute was never had, although deponent and others did not abandon this plan of a settlement between the parties for many months.

"That since 1912, deponent knows that many efforts have been made to obtain a settlement of this case out of Court; that deponent has had several conversations with the defendant in regard to the subject matter of the action, and the defendant has frankly admitted more than once to deponent that plaintiff had an interest in the subject of the action, plaintiff's interest therein, according to the admission of the defendant, differing from the interest claimed by plaintiff himself.

"That although deponent was not present when the case was stricken from the docket, he was informed that such

action had been taken, and was also informed that the case had *been* stricken *from the docket with leave to restore,* that prior to the date on which the case was stricken from the docket *neither the defendant nor anyone in his behalf ever demanded a trial of the case or ever asked the Court to take any action whatsoever in the matter,* but that the case remained upon the docket *without trial by mutual consent until,* as deponent is informed and believes, the case was stricken from the docket *'with leave to restore,'* by Judge Geo. E. Prince *on his own motion in the summer* of 1916; and that since that date nothing has been done by the *defendant nor by anyone in his behalf to have the case restored to the docket and brought to trial or to have any other step taken therein until a short time ago when the defendant sold the real estate,* which is the subject of the action and the *purchaser thereof discovered the notice of the pendency of this action refused to take the title to the land until defendant should have the said notice cancelled and the said action dismissed and ended;* and that for the reasons stated, defendant, through his attorneys, served upon plaintiff, on or about the......day of February, 1927, a notice that he would move before the presiding Judge, at Anderson, on Thursday, February 24, 1927, at ten o'clock A. M., or as soon thereafter as counsel could be heard, for an order dismissing the complaint in this action, on the ground of the failure of plaintiff to proceed in the cause or to prosecute the same; but that defendant abandoned his said motion before the time arrived for the hearing thereof; that, as deponent is informed and believes, the defendant has recently conveyed all of said real estate to American Land and Building Corporation, a corporation under the laws of the State of Delaware, under some sort of an agreement in regard to the interest of plaintiff in said real estate; that the purchase price paid for said real estate by the said corporation, as deponent is informed and believes, was $200,000.-00; and *that* plaintiff now having no further *hope* of an

*amicable settlement with defendant must seek the protection* of the Court and ask that his *case be restored to the docket,* and that he be allowed to proceed to recover his interest in the subject of the action, which, according to the sale price of the real estate as above stated, is not less than $40,000.00." (Italics added.)

The affidavit of Mr. G. B. Greene, also of counsel for the plaintiff, is in entire agreement with the affidavit of Mr. Martin in regard to the proceedings taken in the case, as to the continuance of the case by mutual consent, the attempt to arbitrate the matters, and the efforts to settle the case out of Court. In addition, Mr. Green states in his affidavit:

"That the case was continued by mutual consent of the parties from one Court to another for several years and until the summer term of the Court of Common Pleas, at Anderson, S. C., in 1916, when Hon. Geo. E. Prince, presiding Judge, in calling Calendar No. 2 and finding that the case had been on the Calendar for many terms, stated that he intended to strike it from the docket 'with leave to restore'; that deponent was present at the time and remembers very distinctly that the case was striken from the docket by Judge Prince with leave to restore; that deponent assumed that Judge Prince had made an entry to that effect on the proper place of the Calendar and did not know that he had failed to do so until his attention was called to the omission a few months ago; that at the time mentioned Judge Prince, according to deponent's recollection, was very weak physically and deponent believes that the omission of such entry was due to the physical condition of Judge Prince.

"That since the case was stricken from the docket with *leave to restore,* as above stated, no *effort has been made by defendant* nor by anyone in his behalf to *restore said* case to the docket or to bring it to trial until a short time ago when the defendant sold the real estate, which is the subject of the action, and the purchaser thereof, discovering the notice of the pendency of this action, refused to take the title to said

real estate until the defendant should have the said notice cancelled and the said action dismissed and ended; that for the reasons above stated defendant, through his attorney, served upon plaintiff, on or about the ......day of February, 1927, a notice that he would move before the presiding Judge at Anderson, on February 24, 1927, for an order dismissing the complaint in this action on the ground of the failure of plaintiff to proceed in the cause or to prosecute the same, but that defendant abandoned his said motion and the same was never heard.

"That deponent knows of his own knowledge that plaintiff spent many months on Savannah river working upon the water power project, surveying the land, obtaining water rights, etc., and that plaintiff, since his claim of an interest in said project has been repudiated by defendant, has worked tirelessly in furnishing his attorneys with the necessary data to protect his rights in the premises; that he knows of his own knowledge that plaintiff has never at any time abandoned the said case or his rights therein, but has always intended to bring the case to trial and have his rights adjudicated in the event that he and the defendant could not agree upon an amicable settlement of the case.

"That plaintiff, now an old man, to-wit: about 80 years of age, with the knowledge that the defendant, his partner as it is already alleged, has sold all of the real estate involved in this action, and thereby cut off all chances of an amicable settlement between them, is insisting that his attorneys bring the case to trial and have his rights therein adjudicated." (Italics added.)

There also appears in the transcript of record, introduced by the plainaiff, what purports to be a copy of a letter, dated March 9, 1912, written by one of the attorneys for the plaintiff to one of the attorneys for the defendant, used at the hearing, which has some bearing on the question involved, which reads as follows:

"After talking with Mr. Stribling he authorizes me to say that he will consent that Mr. Grogan be substituted in your stead on the original board of arbitrators suggested by Mr. Fretwell, and accepted by Mr. Stribling—which originally was to consist of you, Major Stribling and me. After the articles of agreement are signed Mr. Stribling will select some other member of the bar in order that Mr. Fretwell may have the option of choosing between him and Major Stribling if he wishes to do so; although Mr. Fretwell suggested Major Stribling, Mr. Stribling himself thought that as he is a kinsman it would be proper to give some choice between him and another man. He would also be willing to substitute any member of the firm of Martin, Greene & Earle for me.

"I have not time to see you or Mr. Fretwell again today but you realize the importance of getting this thing in some sort of shape; I am afraid that Mr. Fretwell does not. I want you to explain to him the necessity to get it shaped up and let him see that it is necessary to his interest to dispose of the matter.

"Mr. Stribling says that he is not willing that this offer shall remain open longer than ten days more. After that time the effort to compromise will be finally declared at an end. I am exceedingly anxious that we shall not fail."

The affidavits of Judge Bonham, Judge Watkins, and Mr. Allen follow:

Affidavit of Judge Bonham:

"That his former firm of Bonham, Watkins and Allen were of counsel for J. J. Fretwell in defense of a case brought by John V. Stribling against Fretwell about the year 1909, and that deponent had the more active management of the defense.

"That deponent does not recall any agreement on the part of J. J. Fretwell or his counsel to arbitrate the issues involved in the said case and does not recall any agreement to

a tentative board of arbitrators consisting of William J. Stribling, B. F. Martin and himself.

"Deponent further says that as he recalls the situation he would not have agreed to serve on this board or to have submitted the matter to arbitration.

"Deponent further says that he had in his possession a considerable number of papers and documents bearing upon said case; that he considered the case ended and when he retired from practice made no effort to preserve these papers that he then considered no longer useful and that he is informed that the papers cannot now be found in the files or records of the said firm and believes this to be true."

Affidavit of Judge H. H. Watkins:

"That he was a member of the firm of Bonham, Watkins and Allen, of counsel for J. J. Fretwell, that he does not remember that suit was filed against Fretwell by John V. Stribling, and that the deponent does not remember any agreement or proposition to have the issues in said case arbitrated by General M. L. Bonham, William J. Stribling and B. F. Martin, or any other board of arbitrators.

"Deponent further says that he went out of the firm of Bonham, Watkins and Allen in the year 1919, and knows nothing of the files and papers in said suit."

Affidavit of T. Allen:

"That he was a member of the firm of Bonham, Watkins & Allen; that according to his recollection his former partner, General Bonham, had in his files the case of Stribling against Fretwell. A few years ago when the firm was dissolved, first by Mr. Watkins going on the bench, and thereafter by General Bonham going on the bench, some disposition, unknown to deponent, was made of the files in this case. Though the matter was not then called to the attention of deponent, he was in fact under the impression that the case had long since been ended. Deponent has made diligent search for the files in said case and has not been able to find them."

The Courts do not encourage delays in the trial of cases, and on a proper showing will dismiss an action for unreasonable delay and for laches. But, where good reason appears for the delay, the Courts should not dismiss an action. In the case at bar, it is my opinion that good and sufficient reason has been shown for the delay, and therefore I think that the action should not have been dismissed, but think the case should have been restored to the Calendar for the purpose of trial. It is true, the fact that the case has stood for a number of years since the suit was instituted, without trial, may work some hardship on the defendant, and it may be, as contended by the defendant, that some of his witnesses have died and some written evidence misplaced or even destroyed, but this should not be the sole test in determining whether or not the order in the case was proper. It is very likely that the plaintiff will also be put to the same disadvantage in proving his alleged case. In this connection it is well to call attention to the fact that the defendant did not have to wait the movement of the plaintiff to bring the case to trial. So far as the record discloses, it was not until February 21, 1927, that the defendant made any movement whatsoever to end the case, when at that time he served notice of motion to dismiss the complaint, but this motion was not made. It was abandoned and not brought before the Court at all. From this attitude on the part of the defendant we must assume that there was not very much earnestness on his part to have the case ended at that time, or at least there existed some good reason for not pushing to get the case ended at that time. It *conclusively* appears from the transcript of record that, after the commencement of the action in December, 1909, the case was continued from term to term by the *mutual consent* of the parties until the summer, 1916, term of Court of Anderson County; that at the summer, 1916, term of Court, Judge Geo. E. Prince, who was presiding, without any motion or request on the part of either of the litigants, but of his own motion, struck the case from the

Calendar, stating at the time that he was striking the case off with leave to restore; that Judge Prince failed to make an entry that the case was struck off with leave to restore, but this fact was not known by plaintiff or his counsel until a short time before the motion before Judge Sease was made. Mr. Greene of counsel for plaintiff, in his affidavit states that he was present when Judge Prince made the statement in Court that the case was struck off *"with leave to restore,"* and this statement of Mr. Greene is not contradicted or controverted by anything in the record. It also clearly appears from the record that one of the reasons why the case was not brought to trial was that an effort was being made to settle the case out of Court, which was desirous, and a mode of settlement of cases the Court encourages. Also, so far as the record discloses, the defendant never at any time demanded a trial of the case, and made no effort to get the Court to take any action in the case whatsoever, until the plaintiff, November 18, 1927, served notice of motion to have the case restored to the Calendar for trial, and the matter was brought before Judge Sease for a hearing on that motion. The motion noticed by the defendant in February, 1927, was abandoned and never brought to the attention of the Court.

Taking into consideration all of the facts and circumstances in the case, it is my opinion that a proper showing was not made for dismissing the case for unreasonable delay and laches, but think that the plaintiff's motion to restore the case to the Calendar for trial should have been granted and the defendant's motion to dismiss refused. In connection with the views herein expressed, attention is called to the following cases: *Babb v. Sullivan,* 43 S. C., 441, 21 S. E., 277; *Hagood v. Riley,* 21 S. C., 143; *Paris Mountain Water Co. v. Foster,* 127 S. C., 248, 120 S. E., 845; *McAuley v. Orr,* 97 S. C., 227, 81 S. E., 489. Of course, the Court knows nothing of the truth of plaintiff's allegations.

The judgment of this Court should be that the order and judgment of the Circuit Court be reversed, and the case re-

manded, with instructions that the case be restored to the Calendar for trial.

MR. CHIEF JUSTICE WATTS concurs.