14915

BELL, PROBATE JUDGE, v. MACKEY *ET AL.*

(3 S. E. (2d), 816)

December, 1938.

The order of Judge Featherstone, requested to be reported, follows:

This action was commenced on or about the 5th day of February, 1937, to recover against Lou M. Mackey, as administratrix and LeConte Mackey, as administrator of the estate of Robert B. Mackey, deceased, and the Fidelity & Deposit Company of Maryland, as surety on the administration bond of Robert B. Mackey, as administrator of the estate of Luther C. Lazenby, deceased, the sum of Eleven Thousand Eight Hundred and Thirty-eight and 48/100 ($11,838.48) Dollars, which embraces a balance of Eighteen Hundred and Eighteen and 90/100 ($1,818.90) Dollars in the hands of Robert B. Mackey, as such administrator, alleged to have been not accounted for; Thirty-eight Hundred and Seventy-one and 72/100 ($3,871.72) Dollars commissions alleged to have been improperly claimed by the said Robert B. Mackey, as administrator, and accrued interest

amounting to Sixty-one Hundred and Forty-seven and 86/100 ($6,147.86) Dollars.

The defendant administratrix and the defendant administrator and the defendant, Fidelity & Deposit Company of Maryland, duly filed their answers herein admitting and denying a number of allegations of the complaint and setting up several special defenses as to the merits and other angles of the case. The cause was referred to H. Hines, as Special Referee, to take the testimony therein and to report the same to the Court. The issues in the cause were heard by the Court on the testimony so reported, the several exhibits and documentary evidence and the pleadings.

It is the Court's purpose and endeavor to pass upon and decide all of the issues in the cause, regardless as to whether the decisions of some of the issues will preclude the necessity for the decisions of other issues.

The following general facts are found and established by the Court as applicable practically to all of the issues involved, to wit:

"(a) That Robert B. Mackey qualified as Administrator of L. C. Lazenby in the Probate Court for Lancaster County on the 11th of October, 1917, approximately nineteen years and eight months prior to the commencement of this action. The Letters of Administration being issued by Judge Stewman, the then Probate Judge for Lancaster County;

"(b) That the Administration Bond in usual form was executed by the defendant, Fidelity and Deposit Company of Maryland, as Surety, in the original sum of $80,000.00, which bond, under order of the Probate Court, dated 5th of December, 1922, was reduced to $20,000.00;

"(c) That the only original records included in the Probate Court is the jacket or cover which contained the record and the original order reducing the bond from $80,000-.00 to $20,000.00; the Letters of Administration were obtained from the recorded copy thereof in the 'Letters Book'; bond from the recorded copy thereof in the 'Bond Book' and

the 'Return Book' contains a recorded copy of the final and only return of the administrator dated 24th of June, 1919, approximately seventeen years and nine months prior to the commencement of this action, showing the then unadministrated balance of $1,818.90 and a credit claimed on account of commissions in favor of the administrator of $3,871.72;

"(d) Judge Stewman, the then acting Judge of Probate, died about the year 1920; his successor, Judge H. H. Horton, served about two years and is also dead; Judge J. P. Richards succeeded Judge Horton, served until about 1st of January, 1933, and is now a member of Congress, the latter being succeeded by Judge O. Roddey Bell, the present Judge of Probate and who is the plaintiff in these proceedings;

"(e) In October, 1918, Mary M. Lazenby and other Lazenby heirs, as plaintiffs, instituted an action in the Court of Common Pleas for Lancaster County against R. B. Mackey, as Administrator, and the other Lazenby heirs, for the partition and sale of real estate in aid of assets. The remaining portions of the record in this case are incorporated in Judgment Roll No. 8864 for Lancaster County. A material portion of the record is missing. Mackey, as Administrator, filed an answer in the cause, which is included in the record, alleging that he has filed his final return in the Probate Court; that he has in his hands $1,818.90 for the payment of any indebtedness that might be established against the estate or for distribution, as he might be directed by the Court, and further alleging a reasonable sum should be allowed to him for attorney's fees for the advice and services rendered by his counsel in connection with the administration of the estate; the record also contains an answer filed by the Lazenby defendants, dated 6th of November, 1918, alleging that Mackey, as Administrator, had received the proceeds of the personal estate, no accounting had been made and praying that the Administrator be required to account. There is also in the record an original Order

signed by Judge R. W. Memminger, Presiding Judge, of the 10th of December, 1918, consented to by the attorneys for all of the answering defendants, referring all the issues of law and fact to Paul Moore, Clerk of Court as Special Referee; directing the Clerk to advertise for creditors to appear, file, establish and prove their claims before him, and Mackey, as Administrator, to fully account before the Clerk for his acts and doings as such. The Complaint in the cause is missing and there is in the record no Order or Decree as to the accounting and no final Decree or other Order in the cause. The record contains a copy of the final accounting of Mackey, as Administrator, and recorded in the Probate Court, together with a large number of original claims, receipts and others items of the Administrator applicable to the administration. The 'Pleadings and Judgment Book' for Lancaster County stops at Judgment Roll No. 8780, (which is prior to the Judgment Roll in the particular proceeding and picks up again at Judgment Roll No. 9395, which is subsequent to the Judgment Roll in the particular proceeding. The 'Pleadings and Judgment Book', the 'Journal Book' of the Court of Common Pleas; the 'Equity Report Book' and the 'Abstract Book' for Lancaster County do not reflect any recorded copies of any Order, Judgment or Decree, which relate to the particular proceeding, other than the Order of Judge Memminger above referred to;

"(f) The original claims, receipts, etc., filed in the proceedings in the Court of Common Pleas by R. B. Mackey, as Administrator, reflect several claims and payments in large amounts which are not reflected as disbursements in the final accounting filed by the Administrator;

"(g) Robert B. Mackey, the Administrator, died on or about the 13th of June, 1929, approximately eight years and three months prior to the commencement of this action;

"(h) Lou M. Mackey, the Administratrix, and LeConte Mackey, the Administrator of the Estate of Robert B. Mackey, and defendants herein, were duly appointed and

qualified by the Probate Court for Lancaster County on the 15th of November, 1929, and filed their first and only return with the Probate Court on the 19th day of December, 1930;

"(i) The return of the Administrator and Administratrix for Robert B. Mackey reflects total receipts of $46,263.29 and disbursements of $46,258.09, with a balance of $5.20, with a number of payments in large amounts to several creditors, either paying their claims in full or a substantial portion thereof. An appraisal of the estate, dated 31st of October, 1929, reflects personal property valued at $38,480.65 and real property valued at $41,510.00. The Sun Indemnity Company of New York executed the Administration Bond originally in the sum of $80,000.00 which was reduced under the Order of the Probate Court on the 24th of December, 1930, as $30,000.00, at which time the Order asserted the value of the personal assets as being $15,000.00;

"(j) Paul Moore, the then Clerk of Court, and Special Referee, in the proceedings of *Lazenby, et al. v. Mackey, Administrator, et al.*, who could throw considerable light on those proceedings in Court of Common Pleas is now approximately eighty years of age and according to the Certificate of his attending physician, included in the records, is not now and has not been in condition to testify in the cause on account of illness;

"(k) The Lazenby interests did not file any claims at any time with the Administrator and Administratrix of Robert B. Mackey, Deceased, and those interests; the respective Judges of Probate and the plaintiffs in this action have asserted no claims nor endeavored to collect the alleged balance due herein from any one prior to the commencement of this action, with the exception that certain of the Lazenby interests filed an Answer in the case of *Lazenby et al. v. Mackey et al.*, above referred to, alleging that the Administrator had certain funds in his hands for which he should account."

These facts constitute all of the general facts which are germane to the controversy. The Court now gives consideration to the several issues raised by the pleadings and the position taken by the respective parties with reference to such other facts as may be necessary in connection therewith.

1. *As to the claims being a stale demand and debarred by laches or equitable estoppel.*

(a) The plaintiff takes the position that these defenses are equitable ones; that the action being at law for the breach of the administration bond and not in equity, these defenses are not applicable. It is the Court's desire to consider this position fully and it accordingly does so.

The applicable provisions of the Code are as follows:

Section 352 of Volume I of the Code of 1932: "There shall be in this State but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action."

That section was enacted in 1870. The Act is incorporated in XIV South Carolina Statutes, page 423. The preamble to the Act is as follows: "Whereas, it is Provided that the present form of action and pleadings in cases at common law should be abolished; that the distinction between legal and equitable remedies should no longer continue and that an uniform course of proceedings in all cases should be established."

While the provisions of the Code are definite and clear as to their construction, the preamble to the Act, at least, indicates the intention of the General Assembly as to the provisions.

The following provisions of the Act of 1870 (XIV S. C. Statutes, Sec. 172), are incorporated as Sec. 467, Volume I of the Code of 1932: "The answer of the defendant must contain: * * * (2) A statement of any new matter constituting a defense or counterclaim, in ordinary and concise language, without repetition."

The applicable provisions of the State Constitution are incorporated in Article 6, Section 3, of the Constitution of 1895. They are as follows: "Justice shall be administered in a uniform mode of pleading without distinction between law and equity."

The following decisions of the South Carolina Supreme Court relate to the statutory and constitutional provisions and the position of the plaintiff:

"The only remaining question is whether the plaintiffs can, in this action which seek relief formerly obtainable only in a court of law, enforce their equitable right to the possession of the property in dispute. Prior to the code, this unquestionably, could not have been done. That statute has, however, introduced fundamental changes in the forms of proceedings for the enforcement and protection of rights in the courts of this State. One of the most important of these changes is that found in Section 92: 'The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and there shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action.' Hence when one comes into court asking for the enforcement or protection of his rights, it does not matter what the nature of his rights may be, whether legal or equitable, he must pursue them by the same form of action. If his allegations and proofs satisfy the court that he is entitled to relief he will obtain it, and the fact that his title to such relief is based upon an equitable rather than a legal right cannot affect or be affected by the form of the action, for, as we have seen, the code provides that there shall be but one form of action for the enforcement and protection of both classes of rights. Such is conclusively shown to be the proper and legitimate construction of the code by Mr. Pomeroy in his work on Remedies, Chap. I, §§ 2 and 5, although a different view seems to prevail in

some of the states which have adopted this system of procedure. As is said by Johnson, J., in *Crary v. Goodman,* 12 N. Y., 266 [64 Am. Dec. 506] : 'Since the enactment of the code the question is not whether the plaintiff has a legal right or an equitable right, or the defendant a legal or an equitable defence against the plaintiff's claim, but whether, according to the whole law of the land applicable to the case, the plaintiff makes out the right which he seeks to establish, or the defendant shows that the plaintiff ought not to have the relief sought for.' Or, as is said by Sanderson, J., in *Grain v. Aldrich,* 38 Cal. 514 [99 Am. Dec. 423] : 'Legal and equitable relief are administered in the same forum, and according to the same general plan. A party cannot be sent out of court merely because his facts do not entitle him to relief at law, or merely because he is not entitled to relief in equity, as the case may be. He can be sent out of court only when, upon his facts, he is entitled to no relief either at law or in equity.' If, therefore, the plaintiffs, while failing to show that they have a legal right to the possession of the property in dispute have succeeded in showing an equitable right to such possession, we see no reason why they should be denied the relief demanded in this action, simply because their title to such relief is based upon equitable and not upon a legal right." *Parker & Co. v. Jacobs,* 14 S. C. 112, page 117, 37 Am. Rep. 724.

"As to the first position, we are inclined to the view that, under the decisions of this court, it is not tenable. While it is true that it has been held that the provisions of the Code have not interfered with the essential and inherent distinction between the different causes of action, legal and equitable (*McConnell v. Kennedy,* 29 S. C., 180, 7 S. E., 76), and whatever was equitable before the adoption of the Code still remained equitable, and what was legal is still legal, and even the mode of trial is preserved (*McMahan v. Dawkins,* 22 S. C. [314], 320), yet it has been declared that all rights, legal or equitable, must alike be enforced or protected by

the same form of action. *Parker v. Jacobs,* 14 S. C. 112, 37 Am. Rep. 724.

"Our Code of Civil Procedure, referring to the answer of the defendant in a civil action, not only indicated what he may plead, but specifically requires that the answer 'must contain': 'A statement of any new matter constituting a defense or counterclaim.' Section 410, vol. 1, Code 1922. This court, constituting this language of the cited section, has made the following holdings, which appear to us to be pertinent here: The Code has enlarged the defendant's opportunity for making various defenses to the action by his answer. *Cohrs v. Fraser,* 5 S. C. 351. The defendant must plead in answer all his defenses, legal or equitable; he cannot bring a separate action on any matter that could have been so pleaded. *McAliley v. Barber,* 4 S. C. [45], 48: 'It is well settled that a person may set up equitable as well as legal defenses by his answer.' *Brock v. Southern Railway Co.,* 44 S. C. 444, 22 S. E. 601.

"Furthermore, the respective modes of trial, formerly given in both legal and equitable actions, have been fully preserved according to the decided cases. Mr. Chief Justice Cary, in the opinion of this court in *Mitchell v. Hamilton,* 98 S. C. 289, 82 S. E. 425, laid down the distinct principle that, 'All issues, both legal and equitable, can be disposed of in one action. But the legal must be submitted to a jury and the equitable must be tried by the court unless issues are framed by the court in the manner provided by law.'

"There may seem to be a difficulty sometimes in having a jury to pass upon legal issues and for the equitable issues to be decided by the court without a jury, but this practice has obtained in this state for a number of years. In the case at bar, however, any difficulty along that line has already been eliminated so far as the appellant and respondent here are concerned since they have heretofore agreed that all the issues, both legal and equitable, in the *'Darlington Case'* are to be heard by the court without a jury.

"We are forced to the conclusion that the respondent had full right to plead any equitable defense desired to be set up by it in the *'Darlington Case.'* "

*Fidelity Fire Ins. Co. v. Windham et al.,* 134 S. C., 373, 381, 382, 133 S. E., 35, 38.

(It will be observed that the testimony in the pending case was under a consent order of reference taken by a Special Referee; the referee has reported the testimony to the Court and the Court under agreement of the parties is to try all of the issues of law and facts involved in the case.)

"It is well settled by our decisions that the defendant is required to plead all his defenses, whether legal or equitable, in the same action.

"In the case of *Rice v. Mahaffey,* 9 S. C. 281, the court said:

" 'The court is, therefore, now competent to administer equitable and legal relief in a single action, and in every action in every manner, and more than formerly the two courts could do when acting separately and sometimes in antagonism. The defendant is, therefore, bound to plead his defenses, legal and equitable, in the action brought, and is estopped from instituting a separate proceeding in the same cause with the same party.'

"In *Fidelity Fire Insurance Co. v. Windham,* 134 S. C. 373, 133 S. E. 35, 38, the court, speaking through Mr. Justice Blease, makes the following clear statement of the question: [Then follows a quotation from the *Fidelity case,* embracing the quotation therefrom above set out.]"

*Frederick et al. v. Chapman et al.,* 144 S. C., 137, 145, 142 S. E., 247, 249.

"Conceding that he elected to bring an action at law, to recover damages for breach of the contract, this did not prevent the defendant from invoking the aid of the court in the exercise of its chancery powers, for the purpose of showing that the plaintiff was not entitled to relief on the law side of the court. It seems that the special referee did not de-

cide the equitable issues raised by the answer. This was error. He should have passed upon them. Under these circumstances, this court will consider them in the first instance, but will remand the case for a new trial in accordance with these conclusions." *Bridges v. Daniel et al.,* 121 S. C. 464, 476, 114 S. E. 422, 425.

"The suit for reformation was, of course, clearly one within the equitable cognizance of the court. If the note was ordered in equity to be reformed, according to the plaintiff's contention, then the recovery of the amount alleged to be due on the note, as reformed, would have been a legal issue to be determined in an action at law. In our practice, under the code, both legal and equitable issues may be determined in the same action. The legal issues are to be determined by a jury, and the equitable issues are to be determined by the court, under the general regulations as to the submission of equitable issues, with or without the intervention of a jury, as the court may direct.

"At this time, we are not concerned with the mode in which the trial was conducted in the lower court, for none of the exceptions question the correctness of the procedure in that respect."

*Henderson v. Rice et al.,* 160 S. C., 307, 321, 158 S. E., 258, 263.

See also finally in this connection *Central Ice Cream & Candy Co. v. Home Insurance Co.,* 171 S. C., 162, 165, 171 S. E., 797, and other decided cases along the same lines, to which this Court does not deem it necessary to refer.

No useful purpose would be accomplished by reference to cases in which an equitable defense was interposed and upheld to a legal demand. However, the Court makes reference as illustrative cases to *Babb v. Sullivan,* 43 S. C., 436, 21 S. E., 277, in which the doctrine of laches was applied to a motion to amend an execution and to *Stribling v. Fretwell,* 157 S. C., 297, 154 S. E., 415, in which the doctrine was applied to the plaintiffs' motion to redocket the

case and the defendant's motion to dismiss for want of prosecution.

The plaintiffs refer to *Keenan v. Leslie,* 79 S. C., 473, 60 S. E., 1114. That case is not in conflict with the rules above referred to and merely holds that where the pleadings raised only legal issues, it is improper to submit to a jury the equitable issues, although proof has been admitted on those issues. The decision refers to *Cooper v. Smith,* 16 S. C., 331, and states (79 S. C., 476, 60 S. E., 1115) : "In that case the court cited *Gadsden v. Whaley,* 9 S. C. 147, *Sloan v. Westfield,* 11 S. C. [445], 447, and *Adickes v. Lowry,* 12 S. C. [97], 108, as strong to the point that an equitable defense set up in the answer in a law case must be tried by the chancellor, either personally, or through the aid of a jury acting under his order, and for his enlightenment." The case is therefore specific authority to the effect that an equitable defense can be set up in a law case. The method of trial is not involved in the present case for the reason, as above stated, the parties have agreed that all the issues shall be heard and disposed of by the Court.

The Court has proceeded in its discussion up to this point on the theory that the classification by the plaintiff of the action as a legal one is correct. The Court is unable to agree in that conclusion. The characterization or classification of the action by the plaintiff as a legal one is not the test: "Many actions are readily classified as legal or equitable, to which there is no general rule that can be applied in all cases. Generally, however, it may be said that the essential character of the cause of action, and the remedy or relief it seeks, as shown by the allegations of the complaint, determine whether a particular action is at law or in equity, unaffected by the conclusions of the pleader or by what the pleader calls it, or the prayer for relief, or the nature of the defense interposed, or new matter stated in the reply, or whether the action is statutory or otherwise. Notwithstanding this, however, it is said that the nature of the

issues as raised by the pleadings or the pleadings and proof, and character of relief sought under them, determines the character of an action as legal or equitable. 1 C. J. S., Actions, § 54b. Also see *Alford v. Martin,* 176 S. C. 207, 180 S. E. 13." *Tuten v. Almeda Farms et al.,* 184 S. C., 195, 200, 192 S. E., 153, 155.

Among the equitable issues involved in the complaint is the administration of an estate and accounting in an action directly against an administrator and an administratrix. Citation of authority in these connections is not necessary.

Further than this, the action in this case is against the administrator and administratrix of the deceased's administrator and the surety of the deceased administrator. It is entirely true that the action was brought by the Judge of Probate, but admittedly it is for the benefit of the heirs-at-law of the Lazenby estate. In *Witherspoon v. Stogner,* 182 S. C., 413, 189 S. E., 758, the actions were brought by the heirs-at-law against Stogner, the administrator of the deceased's administratrix, Mrs. L. K. Witherspoon, and her sureties, John T. Stevens and W. G. Stevens. The complaint clearly and distinctly alleges the existence of the trust relationship, also the necessity for an accounting, demands an accounting and judgment for the balance due on such accounting. The complaint is different from the complaint in the present case in that it specifically alleges the necessity for an accounting. Such necessity in the present case appears from the consideration of the complaint as a whole and not from the specific allegations thereof. Motions for orders of reference were made in the *Stogner case* which were granted and the appeal was from the order. The Court held (a) that the fiduciary relationship between each heir or beneficiary, and the administratrix was fundamental; (b) that the heir or beneficiary as such *cestui que* trust had a right to demand by a suit in equity an accounting at the hands of the trustee; (c) that it thereupon became the duty of the trustee to ren-

der the account; (d) that the pleadings in the cause should be considered as a whole; (e) that in a suit for an accounting against the administrator the sureties are proper parties and that (f) the plaintiff, as *cestui que* trust properly brought suit in equity against the trustee for an accounting and had properly impleaded the sureties on the administration bond. The Court further states, 182 S. C., at page 417, 189 S. E., at page 760: "From a study of the pleadings herein, it is clearly apparent that the accounting will necessarily be not only long and complicated, but from the very nature of the estate, as shown by the allegations describing it, and from the fact that the trust relationship continued over a period of more than thirteen years, involving the rights of *cestui que* trust, who were minors during said period, I am convinced that said accounting would be so intricate and complex that it would be impractical, if not impossible, for an ordinary jury to comprehend and decide the issues correctly. But even if, as attorneys for the two Stevens defendants contend, these causes would be construed as raising issues of law, which I do not concede, it nevertheless appears clear that each cause presents a feature of equitable cognizance, since the proper disposition of each will require the taking of an account so complicated, intricate, involved, and extended in its nature, that an ordinary jury could not intelligently make a proper finding. I am therefore clearly of the opinion that these causes are governed by the provisions of section 653 of the Code of 1932, and that in the exercise of my discretion, these causes should be referred."

The quotation is from the order of Circuit Judge Oxner, which was adopted and approved *in toto* by the Supreme Court on the appeal. Distinction was between the *Stogner case* and *Beatty v. National Surety Co.,* 132 S. C., 45, 128 S. E., 40, to which reference is made by the plaintiff in that the *Beatty case* was clearly an action at law against the surety alone for a definite sum of money which had been fixed and determined. Distinction was also made from the *Anderson*

*v. Aetna Casualty & Surety Co.,* 175 S. C., 254, 178 S. E., 819, in that the action in that case was brought at law for a sum certain predicating the right to recover upon the alleged negligence of the defendant. The same distinction applies as to those cases and the present case.

To say the least as to the position of the plaintiff, if a plaintiff could avoid the defenses of laches, stale demand or equitable estoppel by selecting the forum in which to proceed, it would result in many unjust decisions.

The Court is, therefore, clearly of the opinion that the position of the plaintiff in these respects is untenable and that the defenses properly apply, if established to the present action and it is so ordered.

(b) It is not contended by the defendant that the claim is barred by the Statute of Limitations. The twenty-year period prescribed by the statutes for the commencement of an action on a bond of this nature has not expired, regardless of the other statutory periods which may be applicable. The Statute of Limitation does not control in equity in a case of this nature.

"The doctrine that a claim may be too stale for investigation in this Court, even where it may not be subject to the bar of the statute, or to those presumptions which arise after the lapse of 20 years, is not disputed. And it will be applied in this case with rigour in those branches of the controversy to which it is applicable. * * * " *Hunt v. Smith,* 3 Rich. Eq., 465, 504.

"In *Kirksey v. Keith,* 11 Rich. Eq., 33, the court quotes with approval the following extracts from the opinion of Chief Justice Taney in *McKnight v. Taylor,* 1 How., 161, 11 L. Ed., 86: 'It is not merely on the presumption of payment, or in analogy to the statute of limitations, that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court. In matters of account, where they are not barred by the act of limita-

tions, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice when the original transactions have become obscure by time, and the evidence may be lost.' " *Thomas v. MacNeill,* 138 S. C., 86, 93, 135 S. E., 643, 645.

Prior to the consideration of the facts of the particular case, the Court gives consideration to the rules or so to speak the pattern to which these facts are to be applied. The principles and rules which are applicable are as follows:

*Definition of Laches and Stale 'Demand and Distinctions.*

"Strictly speaking, there are some points of distinction between laches and staleness of demand. 'Laches' has been defined as 'the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done' (21 C. J., 210) ; and as 'the neglecting or the omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time, and in circumstances which afforded opportunity for diligence' (*Babb v. Sullivan,* 43 S. C., 436, 21 S. E., 277). A 'stale demand' has been defined as 'one that has for a long time remained unasserted; one that is first asserted after an unexplained delay of such great length as to render it difficult or impossible for the court to ascertain the truth of the matters in controversy and to do justice between the parties, or as to create a presumption against the existence or validity of the claim, or a presumption that it has been abandoned or satisfied'. 21 C. J., 211. Technically, there are some points of distinction between laches and staleness of demand. Staleness of demand implies a greater lapse of time than is necessary to laches. Again, laches generally involves such change in conditions as would render inequitable the enforcement of a claim, while no such change is necessary in order to create staleness of demand. However, they both fall within the same

general principles of equity, and the distinctions are of little practical importance. 21 C. J., 211. There is no fixed rule as to what constitute laches or staleness of demand. All the circumstances of each case as it arises must be taken into consideration, and each case will be decided upon its own facts; such decision being largely in the discretion of the chancellor." *Thomas v. MacNeill,* 138 S. C., 86, 92, 135 S. E., 643, 645.

"In our view, the petitioner is effectually barred by laches or the staleness of his demand. Strictly speaking, there are some points of distinction between laches and staleness of demand. 'Laches' has been defined as 'the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done' (21 C. J., 210) ; and as 'the neglecting or the omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time and in circumstances which afforded opportunity for diligence.' " *Stribling v. Fretwell,* 157 S. C., 297, 306, 154 S. E., 415, 419.

See also: *Babb v. Sullivan,* 43 S. C., 436, 21 S. E., 277; *Cook v. Knight,* 106 S. C., 310, 91 S. E., 312.

■■ *General Factors Necessary to Establish Defenses.*

"It is confessedly impossible to adopt a general rule, and fix a definite length of delay which shall justify a court of equity in refusing relief on the ground of laches. Each case must be governed by its own facts, and courts of equity must be trusted to exercise a salutary discretion. As we understand the doctrine of estoppel by laches, the facts in this case would justify us in holding that even a shorter delay than nine years and six months, inexcusable or unexplained, would have furnished the circuit court with sufficient grounds for refusing the order moved for. Delay is not the sole factor that constitutes laches. If it were so, some period fixed by statute or by the common law of the courts would afford a safe and unvarying rule. Laches

connotes not only undue lapse of time, but also negligence, and opportunity to have acted sooner; and all three factors must be satisfactorily shown before the bar in equity is complete. Other factors of lesser importance sometimes demand consideration, such as the nature of the property involved, or the subject matter of the suit, or the like. As a definition of 'laches', however, it is sufficiently correct to say that it is the neglecting or the omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time, and in circumstances which afforded opportunity for diligence.

"This definition will be found adequate as a test to be applied to the vast majority of cases. The doctrine embraced in it is in accordance with the principles and the practice of courts of equity, which have from the beginning held themselves ready to aid suitors who come in good conscience, good faith, and with diligence; and from the beginning they have discountenanced stale demands, and refused relief from the effect of negligence and inexcusable delay. We have seen, from the very nature of equity jursdiction, and the principles that guide and control its exercise, that it is impracticable, if not impossible, to fix a definite period of time as a bar or limitation to suits in equity; that lapse of time is not the only test of staleness; that it needs to be conjoined with negligence or inattention, and with opportunity for diligence and for acting sooner. For it is of the essence of laches that the party charged with it should have had either actual knowledge or such notice that would have put him on inquiry. It is manifest, therefore, that the period of time which shall be a bar in equity must needs vary with the varying circumstances in the different cases. Thus, to constitute laches in a case showing gross negligence, a lesser lapse of time would suffice than in a case of ordinary carelessness and inattention. So, too, would the length of time deemed sufficient be greater or less according as the evidence of the case might show whether the party to whom

laches is imputed actually knew of the opportunity he neglected, or was simply presumed to have known.

"Laches being the resultant of a combination of negligence, lapse of time, and loss of opportunity, by as much, therefore, as negligence and knowledge of opportunity may vary in degree, by so much will the period of time vary in length. Speaking generally, it may be said that, the greater the negligence and the knowledge, the less will be the time. Hence the great differences in the length of. the delay which the courts have held to work laches, varying from a few months to any number of years less than 20."

*Babb v. Sullivan,* 43 S. C., 436, 441, 442, 21 S. E., 277, 279.

See also: *McAuley v. Orr,* 97 S. C., 214, 81 S. E., 489; *Cook v. Knight,* 106 S. C., 310, 91 S. E., 312; *Thomas v. MacNeill,* 138 S. C., 86, 135 S. E., 643; *Stribling v. Fretwell,* 157 S. C., 297, 154 S. E., 415.

*Illustrative Cases Applying the Doctrine and Reasons for Application.*

"Where important evidence in behalf of defendant has been lost during the delay of the complainant, he would generally be barred from relief. The loss may result from the death and incapacity of some of the witnesses. Again, the delay may be so long that under the circumstances many of the important facts have become obscured. To allow a complainant relief in such cases would frequently risk a great hardship to innocent parties. Consequently the Court declines to interfere." Fourth Pomeroy Eq. Juris., 4th Ed., 3425.

In *Colding v. Badger et al.,* 3 Rich. Eq. 368, the original bill was filed on the 16th of March, 1842, for an accounting. The defendants held their references in January, 1850. The case stood on the docket for the February term, 1850, when it was continued by the complainant on account of the indisposition of one of the accountants. Nothing further

was done until 14th of November, 1850, at which time motion was given by the defendants that the commissioner would be required to make up his report and if he is unable to make a report on account of obscurity of the evidence then the motion would be made before the Court for the dismissal of the bill for want of prosecution. The commissioner was unable to make up his report and the bill was dismissed for want of prosecution. On appeal the appellate Court held that the dismissal came properly within the discretion of the chancellor, that the same could not be interfered with unless it was grossly erroneous and the Court further stating at page 370: "But the plaintiff required no report,—took no measure to obtain one,—either by rule or otherwise. And when we consider the length of time the case had been pending; the time which has elapsed since the evidence was closed; and, especially, when we consider, that after the explicit notice served on him in November, he totally abstained from taking any steps whatever; we think there was conclusive evidence of laches on his part, richly entitling the defendants to their motion. Were they to be forever hung up in Court? and, how else were they to secure themselves from interminable litigation than by moving for an order to dismiss the bill for want of prosecution?"

In *Pettus v. Clawson,* 4 Rich. Eq., 92, one Stephen Pettus became the administrator on the 8th of January, 1822, sold the estate which was disposed of and made an annual return to the ordinary for several years. The last return made on the 5th of January, 1829, showed a balance against the administrator of $288.96. The widow of the deceased and her children had moved to North Carolina where she continued to reside until February, 1829. The children resided in this State. The administrator was cited to account in 1845. He died in 1846 and the defendant was administrator of his estate. The bill in the case which was filed 14th of May, 1847, required an accounting on the

part of the defendant. The lower Court required the accounting under which a balance was found to be due of $4,268.10. The Court states on the appeal in sustaining the dismissal, except as to the complainant, John Pettus, who was a minor, at page 102 as follows: "Independently of the statute of limitations, it appears to me, that except as to the claim of John Pettus, the demand for an account is, under the circumstances, too stale and antiquated to meet with favor in this Court. It is against good policy to lend too ready an ear to an application to rip up these long standing settlements and accounts. The Court cannot proceed to render judgment, except at the risk of doing great injustice. The transactions under investigation are obscured by the lapse of many years. The administrator is dead. He died under the belief, founded on what was undoubtedly a *bona fide* settlement before the ordinary, that he owed his testator's estate only $288.96, with the subsequently accruing interest. His case has been defended by his own administrator, aided only by the evidence which the wreck of eighteen years leaves at his command. Under these circumstances his accounts have been examined, and on June 17, 1851, the Referee reports a balance due by the estate of the administrator of J. D. O. K. Pettus of $4,268.10. This is a most startling result, and cannot but strongly impress one's mind, with the danger of doing great injustice in these investigations. The case itself is aptly illustrative of both the benignity and wisdom of that rule, which affords to persons called upon for a settlement of stale and antiquated demands, the protection of a legal oblivion."

In *Keitt v. Andrews,* 4 Rich. Eq., 349, the executor made a settlement with one of the complainants on the 13th of December, 1841, and with the other on the 21st of January, 1843. Bills were filed to reopen the settlement on the 18th of December, 1851. The Court states in adopting the lower Court's dismissal of the bills at page 356 as follows: "The defendants have not pleaded the statute of limitations,

nor insisted thereon in their answers. It is needless to say, that the statute would have been applied if the same had been pleaded. But the defendants insisted that the complainants, if their complaint had been otherwise well founded were too late in their application to the Court for relief; that their claim was stale, and the settlement had remained unquestioned for too long a time to be now disturbed. The complainants, Moorer and wife, had acquiesced for more than ten years; and the complainants, Keitt and wife, for nearly eight years before they sought relief in this Court. During the whole of this long interval, they have had as ample means of information as to their rights as they have at the present time. There is no information of which they are now possessed, which they did not possess or have the means of possessing, immediately after, or even before the settlement. In my opinion they have come too late. Parties desirous of opening settlements on the ground of errors and mistakes, where the facts are all within their knowledge, must *make haste* in their application to the Court for relief. Their long acquiescence amounts to a presumed ratification."

In *Babb v. Sullivan*, 43 S. C., 436, 21 S. E., 277, a summons to renew a judgment and execution was served in October, 1883. An order was rendered granting the renewal December, 1884. In 1894 it was sought to amend the renewed execution. The Court states, 43 S. C., at page 440, 21 S. E., at page 278: "No reason or excuse is given for this long delay, nor is the Court informed when the discovery was made that the renewed execution was for too large an amount, nor is there any allegation of fraud. It cannot be said that the defendant has acted with reasonable diligence. He knew that the judgment had been revived against him; he knew the amount for which the execution had been renewed; and we hold that his unreasonable and unexplained delay, and his failure to set up this defense, when in law it should have been set up, the opportunity offering, amount

to such laches as effectually precludes him from obtaining the relief which he or his privies now seek." (And then follows the extended quotation 'from this case hereinabove set out.)

In *Ex parte Baker*, 67 S. C., 74, 45 S. E., 143, a delay was had for nearly ten years in prosecuting an action by a Receiver of a building and loan association against its directors for negligence, during which time several of the directors had died; their estates had been settled and personal representatives discharged, and the Court held there was such laches as would warrant the Court of equity in dismissing the original bill. The Court states, 67 S. C., at page 82, 45 S. E., at page 145: "Of course, now and then delays are very necessary, and no exception is taken to the same. But undoubtedly cases in equity are allowed by the parties to remain on the calendars of the Court undisposed of beyond all patience and all safety. The very object of courts is to provide an expeditious tribunal for the enforcing the rights or redressing the wrongs of litigants. To allow causes to remain on the calendar of the Courts for years and years, with no movement by the parties, and without even an order being taken, presents a strange spectacle. Parties die, witnesses die or move away, records are misplaced, private energy is weakened, and thus the wheels of justice are clogged. When complaint is made to the Court of such slumbering and such ill effects resulting from such sleep, it may result, as in this case, with a wholesome effect to have an order passed dismissing such cases for want of prosecution, or, in other words, because of the laches of plaintiff litigants. In the year 1851, in the case of *Colding v. J. N. Badger et al.*, 3 Rich. Eq., 368, the Court of Appeals in Equity decided that when a bill in equity had been filed in 1842 and after notice of the defendants, in the year 1850, that if the report of the commissioner was not presented, they would move the Court to dismiss the case for want of prosecution, the chancellor dismissed the bill on this

count. When the Court of Appeals in Chancery passed an appeal from such order, that great conservative jurist, Chancellor Job Johnson, in announcing the opinion which dismissed such appeal, said: 'The case presented by this appeal came properly within the discretion of the chancellor, and we should not be authorized to interfere with his decision unless it was grossly erroneous.' "

In *McAuley v. Orr*, 97 S. C., 214, 219, 81 S. E., 489, the action was originally commenced on the 4th of March, 1889; nothing was done from November 30, 1891, until 1912 when a guardian *ad litem* for some of the minor plaintiffs was appointed. In January, 1913, "over eighteen years after his death", referring to W. E. Dickey, under whom the minor plaintiffs claimed, application was made to amend the complaint; the application was resisted and a counterclaim was made to dismiss the whole action. The motion to amend was granted and the motion to dismiss was not granted. The appeal was from that order. The Court states, 97 S. C., at page 222, 81 S. E., at page 490: "Twenty-four years have passed since the commencement of this action. There is no satisfactory explanation on the part of the respondents of the delay of 21 years in the prosecution of this suit. Some of the parties are dead. The minor defendants never were represented and knew nothing of the proceedings until notice was served on them of application for last order made in the case. A number of witnesses, who could have explained the transactions, are dead, and there is no one to supply their testimony, and it would be a hardship on the defendants to now have to defend and resist a suit that they thought ended and abandoned after that great lapse of time. With the recollection and memories impaired, some witnesses dead, it would be almost impossible to find out what the truth is as to the issues involved; there is no question but that the plaintiffs are guilty of laches; and while, as a general rule, negligence, or laches, cannot be imputed to minors, the record shows in this case that

the right of action accrued to them after the death of their ancestor, and that he in his lifetime commenced the suit, and the statute under such circumstances would commence to run in his lifetime, and his death would not arrest the statute in favor of his minor children. The record shows that the minor defendants were served only in 1889, and no steps taken to have them properly and legally represented before the Court, either by their father or plaintiffs' attorneys, in pursuance of notice served, and during all the years that the cause was on calendar, or struck off, or restored, they had no one to represent their interests, and whatever was done in no way bound them. The use of due diligence in the prosecution of this cause was upon the respondents; there is an unsatisfactory and inexcusable delay on their part which we think was caused by their laches."

In *Cook et al. v. Knight et al.*, 106 S. C., 310, 91 S. E., 312, 313, the action was for the reformation of a deed. The deed was executed in 1872; grantor died in 1901 and the suit was commenced in 1915. There was no allegation as to the time when the mistake in the deed was discovered or excuse for the delay of the plaintiffs in commencing the action. The Court held that it is not necessary to set up laches as a defense formally and that it need not be specially pleaded for the reasons where "it clearly and satisfactorily appears in the Court from the evidence that there has been an unreasonable delay in prosecuting the suit, the Court, on its own motion, should not rest its decision on that ground [that is the ground that laches had not been pleaded]. * * * [The Court] recognizing the power of the Court in a proper case, to raise such objection." After quoting an extended excerpt from *Babb v. Sullivan, supra,* embracing practically all of the excerpts from that case hereinabove quoted, the Court applied the doctrine of laches.

In *Thomas v. MacNeill,* 138 S. C., 86, 135 S. E., 643, 644, Mary K. MacNeill was in February, 1898, appointed as guardian for her daughter, Clara N. MacNeill, and re-

ceived approximately $6,000.00 belonging to her estate. The daughter became of age on 7th of October, 1905. In 1909 she signed a release stating that her mother had turned over to her and spent on her for education a much greater sum than the property received for her as guardian. She died in March, 1919, leaving a will in which her husband, Charles I. Thomas, was appointed as executor. In the summer of 1924, a petition was filed by the executor to compel Mrs. MacNeill to account for the assets which came into her hands as guardian. The Probate Judge filed an order dismissing the petition. The order was sustained on appeal to the Circuit Court. That Court stressed the following facts in sustaining the order: "This proceeding was started nearly nineteen years after she executed the release to her mother, and more than five years after her death. The execution of the release, the failure of Clara to make any claim during her lifetime against Mrs. MacNeill, and the failure of the Executor, for so long a time, to assert such claim, constitute proof of the most convincing character." In sustaining the decision of the Circuit Court, the Supreme Court quoted extensively from *Babb v. Sullivan, Kirksey v. Keith,* and *Cook v. Knight, supra.* It made the following statements, 138 S. C., at page 95, 135 S. E., at page 646 of the decision: "We do not feel that these circumstances [referring to the circumstances of the case], combined with the great lapse of time, are subject to any interpretation other than that the ward never had any right of action against her mother or that, if she had such right, she had intentionally and consciously and with full knowledge abandoned it.   *   *   * "

In *Stribling v. Fretwell,* 157 S. C., 297, 154 S. E., 415, the appeal was from an order dated 13th of December, 1927, refusing a motion of the plaintiff to redocket the case and granting a motion by the defendant to dismiss the case upon the ground of unreasonable delay and laches. The action was instituted on 24th of December, 1904. On 1st of

January, 1910, five years after the commencement of the case, counsel for Stribling made a motion for an order submitting certain issues to a jury, and on the 10th of May, 1910, made a similar motion. On the 14th of January, 1911, six years after the institution of the action, the attorneys entered into an agreement as to the introduction of certain records. The case was continued on the calendar from term to term and in 1916, nearly twelve years after the action had been commenced, the Court ordered the case stricken from the docket. No further action was taken by counsel for Stribling until November, 1927, eleven and a half years after the case had been stricken from the calendar. The Court states, 157 S. C., at page 300, 154 S. E., at page 417: "The transactions involved occurred nearly a third of a century ago. The recollections of witnesses are dimmed by time. A material change has occurred in the ability of the defendant to present his defense to the Court. Three of his most important witnesses have died since the case was stricken from the docket. His counsel charged with the defense of the case at the time it arose have either died or been promoted to the bench and are no longer available. His documentary evidence was partly destroyed by a fire in the office of one of his counsel in 1919. Other documentary evidence was retained by one of his counsel, now Judge Bonham, until he gave up the practice of law, at which time, considering the case long since ended and the data not valuable, it was destroyed or lost. It would be most inequitable now to allow the plaintiff to have the advantage of such a natural and inevitable change in the ability of the defendant to present his defense."

The Court then quotes from *Langston v. Shands,* 23 S. C., 149, in which it was held that the lapse of seven years is so great laches on the part of the plaintiff that an action could not be restored to the calendar. It then quotes extended excerpts from *Babb v. Sullivan; Ex parte Baker; McAuley v. Orr* and *Thomas v. MacNeill, supra,* and con-

cludes that the motion to dismiss was largely in the discretion of the lower Court and sustains that Court in the dismissal.

Citation of authorities is unnecessary to sustain the conclusions that Mackey, as administrator; the several Judges of Probate; the Special Referee and the Clerk of Court in the proceedings in the Court of Common Pleas all did their respective duties. Citation of authority is also unnecessary for the conclusion that the Lazenby interests, in whose interests this action is admittedly brought; the plaintiff in this action and his predecessors, were for many years charged with notice from the proceedings in the Probate Court, and those in the Court of Common Pleas; as a matter of fact the Lazenby heirs were all parties to the proceedings in the Court of Common Pleas.

*Application of Facts of Present Case to Rule.*

The several cases above referred to establish the rules or a pattern to which the facts in the present case are to be applied and the factors which are to be taken into consideration in that application. The Court does not deem it necessary to re-state with any particularity the various rules and factors but calls attention to the salient facts and the application becomes self-evident.

(a) *Lapse of Time or Time Element.*

Robert B. Mackey was appointed as administrator on the 11th of October, 1917, approximately 19 years and 4 months prior to the commencement of this action; his final and only return on which the action was based was filed on or about the 24th of June, 1919, approximately 17 years and 8 months prior to the action; Judge Stewman, the then Judge of Probate, died about 1920, approximately 17 years prior to the action; suit in the Court of Common Pleas instituted by the Lazenby heirs, to which Mackey, as administrator, was a party, for partition and sale of land in aid of assets and in which Mackey was required to account, was instituted in October, 1918, approximately 18 years and

4 months prior to the action; the order of Judge Memminger in that suit requiring Mackey to account was dated 10th of December, 1918, approximately 18 years and 2 months prior to the action; the abstract of Judgments Book for Lancaster County shows that the final judgment of some nature was rendered in that suit on the 26th of September, 1922, approximately 14 years and 5 months prior to the commencement of the action; Mackey, the administrator, died on the 13th of June, 1929, approximately 7 years and 8 months prior to the action; approximately 10 years subsequently to the filing of the return; approximately 10 years and 6 months subsequent to the order of Judge Memminger requiring him to account and approximately 6 years and 5 months subsequent to the final judgment in the suit in the Court of Common Pleas; Lou M. Mackey and LeConte Mackey, the defendants herein, were appointed as administratrix and administrator for Robert B. Mackey on or about the 15th of October, 1929, approximately 7 years and 4 months prior to the commencement of this action and they filed their first and only return as administratrix and administrator on or about the 19th of December, 1930, approximately 6 years and 2 months prior to the commencement of this action. During all of these periods it is admitted that neither the plaintiff, his predecessors in office, and none of the Lazenby heirs made any claim, demand upon or any effort to collect the claimed balances from either of the defendants herein, or from the said Robert B. Mackey during his lifetime, the latter being subject to the qualification as to the accounting proceedings which were instituted in the Court of Common Pleas and in which a final judgment was rendered and the provisions of which are unknown.

(b) *Other Factors.*

The entire record in the Probate Court, with the exception of an order reducing the administration bond and the jacket in which the record was contained, has been lost or

misplaced; the original Judge of Probate and his succes-
sor in office have both long since been dead; the major por-
tion of the original record in the proceedings in the Court
of Common Pleas, consisting of the complaint, all orders,
exclusive of the order of Judge Memminger, and including
the final judgment rendered therein, on the 26th of Sep-
tember, 1922, have been lost or misplaced; there is a gap in
the books in the Clerk's office for Lancaster County in
which the proceedings in this case should· have been re-
corded and there is no recorded record other than that of
Judge Memminger's order; the order of Judge Memminger.
required Mackey, as administrator, to account in those pro-
ceedings, as far as the records show he may have so ac-
counted; there are a large number of claims against the
Lazenby estate filed in those proceedings, some of them do
not appĕar to have been paid, according to Mackey's re-
turn, as administrator; the answer filed by Mackey, as
administrator in those proceedings, prays that his attor-·.
ney be allowed a fee and that the same be paid out of the
balance in his hands; it is entirely probable that the remain-
ing funds in Mackey's hands were disbursed in settlement
of the additional ·claims, counsel fees and costs; the final
order or decree was rendered in the proceedings on the 26th
of September, 1922, as appears by the Abstract Book; the
original is missing and there is no recorded copy, that or-
der may have approved the accounting rendered by Mackey
in the case and discharged him as administrator; Mackey,
the administrator, is dead and his mouth is closed; further-
more, the Special Referee, in the proceedings above referred
to and the then Clerk of Court, is not now and has not been
in condition to testify; the Lazenby heirs were charged
with notice of Mackey's death and the administration of
his estate; the record as to that estate shows that it had sub-
stantial assets and after the time subsequent to the filing of
the first return the representatives had on hand approximate-
ly $15,000.00 in personal assets; no ·claim was filed with

the representatives of that estate by any of the Lazenby heirs and there is no affirmative proof that the entire balance with which Mackey, as administrator, is charged, was not properly accounted for and disbursed.

The case is a typical one of lapse of time, death of parties, loss of records, impairment of memory, coupled with inaction, inattention and negligence on the part of the Lazenby interests, leaving the defendants therein in practically a hopeless position to refute the claims of the plaintiff. All of these eventualities could have been obviated if the Lazenby heirs, for the benefit of whom this action is brought, had seen fit to have proceeded with diligence and promptness to assert their rights, if they had such rights to assert. The Court is not at all convinced that there was not a proper accounting by Mackey in the proceedings in the Court of Common Pleas, with an approval thereof under the final order of 26th of September, 1922, which is missing.

The Court is satisfied that the three necessary essentials: (a) lapse of time; (b) inaction and negligence, and (c) opportunity to have proceeded sooner, have been successfully established as to the Lazenby interests, therefore it finds and concludes that the defenses of laches and staleness of demand have been successfully established, and it is therefore ordered, adjudged and decreed that the plaintiff's demand is disallowed and his action is dismissed on those grounds.

While the Court would prefer to rest the disposition of the entire case on these grounds, it feels it necessary and advisable to comment upon and dispose of the other issues which are raised and proceeds so to do.

II. *As to the Claim for Interest.*

The demand of the plaintiff includes an item of interest from the date of the final return up to the commencement of the action on the 5th of February, 1937, amounting to $6,147.86.

The Court is of the opinion that the interest demand is subject to debarment on the grounds of laches or equitable estoppel. That conclusion comes under the principles of the cases above referred to. For authorities directly in point, see 35 Corpus Juris, page 239; *Smith v. Hunt,* 3 Rich. Eq., 465; *Pettus v. Clawson,* 4 Rich. Eq., 92; *Redfield et al. v. Iron Co.,* 110 U. S., 174, 3 S. Ct., 570, 28 L. Ed., 109, and *Sanborn v. U. S.,* 135 U. S., 271, 10 S. Ct., 812, 34 L. Ed., 112.

Further than this the allowance of interest against an executor or administrator is in the discretion of the Court: "The following is stated in *Huguenin et al. v. Adams et al.,* 110 S. C., 407, 96 S. E., 918, 922: 'There is no inflexible rule of law that a balance against a trustee at the end of the year shall bear interest the year following. Each case must depend upon the circumstances of it. The only inflexible rule is that the trustee shall not make a profit out of the balance in his hands, and that he shall not be charged with loss except for neglect of duty.' And in *Nicholson v. Whitlock,* 57 S. C., 36, 35 S. E., 412, 414: 'The principle is well established that it is a matter of discretion with the Court, in the exercise of its equitable jurisdiction, whether it will allow interest against the administrator.' See also *Dixon v. Hunter's Distributees,* 3 Hill, 204; *Pettus v. Clawson,* 4 Rich. Eq., 92; *Tompkins v. Tompkins,* 18 S. C., 1; *Glenn v. Worthy,* 169 S. C., 263, 168 S. E., 705." *Beacham v. Ross et al.,* 187 S. C., 398, 197 S. E., 369, 373.

In addition to the cases cited in the *Beacham case,* the following cases sustain the same proposition: *Turnipseed v. Sirrine,* 60 S. C., 272, 38 S. E., 423; *Bowen v. True,* 74 S. C., 486, 54 S. E., 1018, and *Epperson v. Jackson,* 83 S. C., 157, 65 S. E., 217.

The Court is satisfied that the exercise of its equitable discretion demands that the interest claim be disallowed.

It is also ordered, adjudged and decreed that all claims for interest be and they are disallowed.

III. *As to Commissions Being Properly Credited in Favor of the Administrator.*

The final accounting rendered by the administrator sets up as a credit an item in the sum of $3,871.72 on account of commissions. The account is dated the 4th of June, 1919. It is conceded that the amount, if allowable, is based on the proper statutory rate as applied to the receipts and disbursements. The plaintiff contends that the account was not filed within the time provided for by the Statutes and the administrator is not entitled to credit on account of the commissions. The situation is governed by the statute which was in force at the particular time. That Statute is incorporated as Section 3648, Civil Code of 1912. The Section provides: "Executors or administrators shall *annually,* while any estate remains in their care or custody, at any time before *the first day of July of each year,* render to the Judge of Probate of the County from whom they obtained letters testamentary or letters of administration a just and true account, upon oath, of the receipts and expenditures of such estate *the preceding calendar year* \* \* \*."

The administrator qualified on the 11th of October, 1917. The final return was dated the 24th of June, 1919. It was evidently filed prior to the 1st of July, 1919.

Two phrases in the Statute demand attention, "shall annually" and "the preceding calendar year." Citation of authority is unnecessary to establish the meaning of "a calendar year." It is construed to be 365 days, divided into 12 months from the first day of January to the 31st day of December, inclusive. It is obvious, according to the Court's interpretation, that a calendar year had not elapsed during the period from the 11th of October, 1917, to the 1st of July, 1918, and that, therefore, there was no necessity on the administrator to file his annual re-

turn until the calendar year had elapsed. The point of time for such elapsing is definitely fixed as the first of July. The only calendar year which actually elapsed subsequent to the appointment was for the period 1st of July, 1918, to 1st of July, 1919. The return was filed prior to the expiration of that period. In other words, as the Court views it, there was no responsibility on the administrator to file a return until the actual elapsing of a calendar year and then only prior to the 1st of July after such elapse. In other words, there was no responsibility for filing return for a part of a calendar year.

The proceedings in which the accounting was involved were instituted in the Court of Common Pleas for Lancaster County prior to the actual filing of the return by the administrator. The Court of Common Pleas certainly at that time had jurisdiction of the accounting. No citation of authority is necessary in that respect. What orders were passed in the Court of Common Pleas in that connection? The record is silent. The Lazenby heirs were all parties to the proceedings in the Court of Common Pleas. The final order of 22nd of September, 1922, is missing. What did that order provide? It may have approved the account of the administrator including the allowance of the commission and by which inclusion the Lazenby heirs were bound. What action was taken in the Probate Court as to the commissions? Was the time for filing the return extended by the Court? Was there any justifiable reason presented to the Probate Court why the return was not filed within the proper time if it were not so filed? Practically the entire record in the Probate Court is missing. It is unnecessary to again recite the facts. If this claim had been asserted during Mackey's life time, and during the period when the Special Referee was in condition to testify as to what occurred, and prior to the loss or misplacement of the records, the situation could be gone into from a factual basis. The inattention and inaction of the Lazenby interests

makes that now impossible. Clearly, the defendant should not be required to suffer on account of that inattention and inaction.

The Court is, therefore, of the opinion that the commissions were a proper charge in favor of the administrator and it is so ordered.

IV. *As to the Administrator and a Surety Being Allowed Credit for Rentals and Receipts from Real Estate.*

The plaintiff takes the position that the burden of proof on this issue is on the defendant. Witnesses are dead; parties have moved away who are familiar with the entries in the administrator's return, and records have been misplaced. The onus as to that situation has been previously commented upon. Therefore, the only available evidence is the entries in the administrator's return in that connection. The returns disclose items totalling $6,107.61 as being derived from one-half of the proceeds of bales of cotton and one-half of the proceeds from the sale of cotton seed received from a number of designated parties. The Court presumes that these items must have been received from sharecroppers or renters. Further, the account discloses items aggregating $4,572.09, designated as having been received from cotton or cotton seed with the names of a number of parties listed in connection therewith. The Court concludes that those items must necessarily have been received from the real estate.

The present action is apparently on the official bond filed by the administrator. That bond obligates the administrator and his surety to account for "the goods, chattels and credits."

"The duties of an administrator, as prescribed by law, seem to relate entirely to the personal estate. It is, as his bond speaks, only of the goods and chattels, rights, and credits. Generally speaking, we are to resort entirely to the contract which creates a liability, in order to ascertain what

that liability is. Taking this as our guide, it would seem the securities do not undertake to become responsible for the acts of their principal in relation to the real estate, and consequently are not chargeable with his default in this particular." *Allen, Ordinary, v. Burton & Harllee, Administrators,* 1 McMul., 249.

Also : *Bomar v. Wilson, Executor,* v *Bailey* 461 ; *Wiley v. Johnsey,* 6 Rich. Law, 355, 40 S. C. Law, 355.

"A Surety on an administration bond is not liable for rents collected by the administrator for land of his intestate." *Jennings v. Parr,* 62 S. C., 306, 40 S. E., 683.

To say the least the defendants are entitled to credit for $6,107.61, the amount designated as having been received from one-half of the proceeds of the cotton and cotton seed. That amount exceeds the entire original principal amount including the balance in the hands of the administrator and the commissions claimed to have been improperly deducted.

The Court is of the opinion that the item of $6,107.61 should be applied as a proper credit on the account which, under this theory, leaves nothing due by the defendant to the plaintiff and it is so ordered.

V. *As to the Credit Claimed by the Surety on Account of Premium.*

The surety sets up in its fifth special defense as a credit against any amount found to be due by it in the sum of $466.67 for premiums at the rate of $46.67, subsequent to the year 1927, which have not been paid. It is conceded by counsel that this is the proper amount of the premiums which are unpaid, if such premiums are to be allowed as a credit.

The Court is of the opinion that the premiums on the bond would not be properly chargeable after the date of a breach thereof. If there was a breach of the bond in this case, it occurred prior to the date of the

period which it is sought to have the premiums credited. Wherefore, the claim for the premiums would not be a proper credit and it is so ordered.

*Messrs. Gregory & Gregory,* for appellant,

*Messrs. Williams & Stewart* and *Sloan & Sloan,* for respondents,

July 12, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The facts which make the issues in this intricate and intering case are fully set out in the able, well-considered

and comprehensive decree of Judge Featherstone, who heard the case on circuit, and will not be reproduced here. The decree is satisfactory to the Court, and might well have been left to stand upon the conclusions stated on page 55 of the Record. However, the Circuit Judge says there: "While the Court would prefer to rest the disposition of the entire case on these grounds, it feels it necessary and advisable to comment upon and dispose of the other issues which are raised and proceeds so to do." Accordingly, we follow him in his consideration of these issues.

The first is the matter of interest which the plaintiff seeks to claim from the date of the first return up to the commencement of the action on February 5, 1937. We concur with the Circuit Judge that this claim of interest is disbarred on the grounds of laches and equitable estoppel. See the authorities cited in the decree.

As to the commissions being properly credited in favor of the administrator, we think the Circuit Judge has properly construed and applied Section 3648 of the Civil Code of 1912, under which the question falls.

As to the administrator and the surety being allowed credit for rentals and receipts from real estate, the appellant contends as follows: " * * * If the Court is justified in concluding that the items referred to above represented crops grown by sharecroppers on lands of the estate, it must likewise, to be consistent, find that that portion of the return which shows items of expenditure which might be applicable to farming operations would in fact represent estate funds used by the administrator to carry on farming operations."

Such conclusion would be only an assumption. The administrator had no authority to carry on farming operations on the lands of the intestate's estate. There is no showing of any order of the Probate Court giving him power to carry on such farming operations.

Moreover, this would be an issue between the administrator and the heirs-at-law of the intestate.

In October, 1918, Mary M. Lazenby and other Lazenby heirs, as plaintiffs, instituted an action in the Court of Common Pleas for Lancaster County against R. B. Mackey, as administrator and other Lazenby heirs, for partition and sale of real estate in aid of assets. A material portion of the record is missing. The record contains an answer filed by the Lazenby defendants dated November 6, 1918, alleging that Mackey, as administrator, had received the proceeds of the personal estate and had made no accounting, and praying that he be made to account.

It is a natural conclusion that this issue was involved in the case. Judge Memminger made an order referring all issues of law and of fact to Paul Moore, Clerk of Court. There is no final decree or order in the case appearing in the record, and the referee is incapable of giving any information about the case. In such circumstances we think the Circuit Judge has arrived at a correct conclusion of this matter.

As to the credit claimed by the surety on account of premium, we agree with the Circuit Decree that the surety is not entitled thereto, for, as said by the decree: " * * * If there was a breach of the bond in this case, it occurred prior to the date of the period which it is sought to have the premiums credited."

Respondents, in their brief, seek to set up "additional sustaining grounds". But these are not properly presented in accordance with the provisions of the appropriate rules of Court, and, therefore, are not considered.

The exceptions are overruled. The judgment is affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE FISHRURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.

MR. JUSTICE CARTER did not participate on account of illness.